**WORLD PRODUCTIONS, INC.,**
**Appellant (Defendant Below),**

v.

**CAPITAL IMPROVEMENT BOARD OF MANAGERS OF MARION COUNTY,**
Indiana, Appellee (Plaintiff Below).

No. 29A02–8702–CV–56.

Court of Appeals of Indiana,
Second District.

Oct. 26, 1987.
Rehearing Denied Jan. 6, 1988.

Charles B. Huppert, Daniel B. Altman, Huppert & Altman, Indianapolis, for appellant.

John P. Price, David O. Tittle, Grace M. Curry, Bingham Summers Welsh & Spilman, Indianapolis, for appellee.

SHIELDS, Presiding Judge.

World Productions, Incorporated, by interlocutory appeal, seeks reversal of the Hamilton Circuit Court's judgment dismissing two counts of its complaint against the Capital Improvement Board of Managers of Marion County, Indiana.

## ISSUES

The issues certified for review are:

1) whether an action for tortious interference with a contractual relationship exists by the breaching party against an alleged inducing third party; and

2) whether punitive damages may be assessed against the Capital Improvement Board of Managers of Marion County?

We affirm.

## FACTS

The Capital Improvement Board of Managers of Marion County, (C.I.B.), created by IC 36–10–9–3 (Burns Supp. 1987), is responsible for operating the Indiana Hoosier Dome and Convention Center located in Indianapolis, Indiana. On January 22, 1985, World Productions, Incorporated (W.P.I.) contracted with the C.I.B. to use those facilities during January of 1986. W.P.I. initiated this action against the C.I.B. when the convention facilities allegedly were not made available as agreed. W.P.I. sought punitive damages for breach of contract in Count I of its complaint. In Count III, W.P.I. sought damages against the C.I.B. for tortiously interfering with its ancillary contractual obligations to various exhibitors. W.P.I. seeks reversal of the trial court's dismissal of these counts.

## DECISION

### I.

W.P.I.'s claim for tortious interference with a contractual remedy was properly dismissed by the trial court. As a basis for its claim, W.P.I. alleged the C.I.B.'s fraudulent breach of its contract with W.P.I. caused W.P.I. to breach its ancillary contracts with exhibitors. However, an action for tortious interference with a contractual right is not available to the party in breach.

"An action for intentionally inducing a breach of contract exists when a third party, acting in bad faith, and with knowledge of the contract, induces a party to the contract to breach it. When this occurs, the *non-breaching* party has an action for interference against the inducing third party....

We are not cited to, nor do we find authority to support an action for interference by the breaching party against the inducing third party;"

*Claise v. Bernardi* (1980), Ind.App., 413 N.E.2d 609, 612 (emphasis added). Hence, the dismissal of Count III was proper.

### II.

The trial court properly dismissed W.P.I.'s claim for punitive damages against the

C.I.B. for breach of contract because the C.I.B. is a governmental entity immune from punitive damages.

The Tort Claims Act [1] prohibits the assessment of punitive damages against governmental entities. However, the Act "applies only to a claim or suit in tort," IC 34–4–16.5–1 (Burns 1986). Generally, punitive damages are not recoverable in breach of contract actions except where the conduct of the party breaching the contract independently constitutes the elements of a commonlaw tort. An exception to the general rule exists whenever elements of fraud, malice, gross negligence or oppression mingle in the controversy. *Vernon Fire and Casualty Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173. "[W]hen it appears from the evidence as a whole that a serious wrong, tortious in nature, has been committed ... only when these factors coalesce will the independent tort requirement be abrogated, and the allowance of punitive damages be sustained." *Canada Dry Corporation v. Nehi Beverage Company, Inc. of Indianapolis* (1983 7th Cir.), 723 F.2d 512, 524 citing *Vernon,* 264 Ind. at 608, 349 N.E.2d at 180. Additionally, in order for punitive damages to be awarded in a contract action, it must appear "that the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and parties similarly situated." *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 358; citing *Vernon,* 264 Ind. at 608, 349 N.E.2d 173.

Because it is not always necessary to establish the existence of an independent tort to sustain a claim for punitive damages in a contract action, it is not a foregone conclusion that the Tort Claims Act governs the result in this case, even assuming, that the C.I.B. is a governmental entity. Nevertheless, the assessment of punitive damages against governmental entities contravenes Indiana public policy regardless of whether a tort or contract theory of recovery is asserted. In *Department of Natural Resources v. Evans* (1986), Ind.

App., 493 N.E.2d 1295, 1303, this court elaborated:

"[u]nder the common law, an award of punitive damages against the State was questionable. The common law has been superceded by IND.CODE 34–4–16.5–4 which states in part: 'a governmental entity is not liable for punitive damages.' The Indiana Supreme Court noted in *State v. Denny,* that this provision is part of the Indiana Tort Claims Act but: 'Nonetheless, the concept of the State not having a state of mind or not being deterred by punitive damages should be the basis for the prohibition of such punitive damages in all cases applicable to the State. Such Act, should be considered as a statement of public policy by the legislature that the State is not to be considered as being liable for punitive damages.... 406 N.E.2d at 242' [sic (241) ]."

Therefore, the dispositive issue before us is whether the C.I.B. is a governmental entity. If so, it is exempt from punitive damages irrespective of the general applicability of the Tort Claims Act. If not, punitive damages could be assessed depending on W.P.I.'s evidence. Although, *State v. Denny* (1980), 273 Ind. 556, 406 N.E.2d 240, negates the need for this court to determine whether W.P.I.'s claims are subject to the Tort Claims Act, the Act's definition of "governmental entity" illustrates the legislative notion of the meaning of the terms. IC 34–4–16.5–2 (Burns Supp. 1987) states in relevant part:

"(c) 'Governmental entity' means the state or a political subdivision of the state....

....

(f) 'Political subdivision' means a:
(1) County;
(2) Township;
(3) City;
(4) Town;
(5) Separate municipal corporation;
(6) Special taxing district;
(7) State college or university;
(8) City or county hospital;

---

1. IC 34–4–16.5–1 et seq. (Burns 1986).

(9) School corporation; or

(10) Board or commission of one (1) of the entities listed in subdivisions (1) through (9).

(g) 'State' means Indiana and its state agencies.

(h) 'State agency' means a board, commission, department, division, governmental subdivision including a soil and water conservation district, bureau, committee, authority, military body, or other instrumentality of the state. However, the term does not include a political subdivision."

Just as the Tort Claims Act exempts "governmental entities" from liability in certain tort claims, the Occupational Safety and Health Act of 1970, 29 U.S.C. § 652(5), exempts the state and political subdivisions of the state from its purview. In *Brock v. Chicago Zoological Society* (1986 7th Cir.) 820 F.2d 909, the court employed a two-part inquiry to decide whether the Chicago Zoological Society, which operates the Brookfield Zoo, was a governmental entity. The case provides this court with authoritative guidance in making the basal determination of whether the C.I.B. is a governmental entity.

Under the terms of the inquiry, "any entity that is '(1) created directly by the State, so as to constitute a department or administrative arm of the government, or (2) administered by individuals who are controlled by public officials and responsible to such officials or the general public' will be deemed to be a state or political subdivision under [29 U.S.C.] § 625(5)." *Brock*, 820 F.2d at 910; citing 29 C.F.R. § 1975.5(b). Moreover, the entities enumerated as political subdivisions in the Tort Claims Act are either created by the State as instrumentalities for performing government functions or administered by individuals who are controlled by public officials and responsible to such officials or the general public. Thus the enumerated entities possess the characteristics upon which the *Brock* inquiry focuses.

█ The members of the Capital Improvement Board are accountable to public officials, thereby passing the second arm of the *Brock* test. Legislative factors evidencing this accountability include: Board members are appointed by the executive of the consolidated city (Indianapolis) and the Board of Commissioners of the County (Marion), IC 36–10–9–4(a) (Burns Supp. 1987); a Board member may be removed for cause by the appointing authority, IC 36–10–9–4(d); real property which the Board acquires is held in the name of the County and may not be sold without the approval of the executive of the consolidated city (Indianapolis), IC 36–10–9–7(b) (Burns Supp.1987); the Board's funds must be handled and accounted for in the same manner as other public funds, IC 36–10–9–9(b) (Burns Supp.1987); the Board's annual budget must be approved by the city-county legislative body, IC 36–10–9–8 (Burns Supp.1987); and the Board is subject to audit and supervision by the State Board of Accounts, IC 36–10–9–9(f). These factors, though not exhaustive, sufficiently manifest public control over the C.I.B. to compel the conclusion the C.I.B. is a governmental entity entitled to immunity from punitive damages as required by the supreme court's interpretation of legislative policy in *State v. Denny*. Consequently, it is enough to say the C.I.B. is a governmental entity without classifying it as a particular political subdivision enumerated in the Tort Claims Act.

W.P.I. urges us to restrict governmental immunity from punitive damages to situations where the entity acts in a public, rather than proprietary capacity. This argument is grounded upon W.P.I.'s contention the C.I.B.'s function is wholly proprietary in nature and the prevailing "trend," in Indiana and elsewhere, is to limit governmental immunity from suit wherever possible. Assuming *arguendo* the C.I.B. acts only in a proprietary capacity, W.P.I.'s contentions confuse the law in this area.

The governmental-proprietary distinction arose as a judicial method of ameliorating the severity of unqualified sovereign immunity from suit when the common law afforded such immunity. The distinction was abrogated finally and completely with the abolition of sovereign immunity effectuated in *Campbell v. State* (1972), 259 Ind. 55,

284 N.E.2d 733. *See Cain v. Board of Commissioners of Cass County* (1986), Ind.App., 491 N.E.2d 544, 548. When the legislature, through the Tort Claims Act, chose to reinstate some of the immunity which the State once enjoyed, it did so without reference to the governmental-proprietary distinction. Furthermore, the question here is not whether the sovereign is immune from suit, but whether the sovereign is immune from a potential levy of punitive damages—an issue to which the distinction was never applied.

The legislative policy exempting the State from punitive damages is based on the rationale that the public interest in deterrence will not be served by an assessment of punitive damages against a sovereign entity not possessing state of mind. *See Department of Natural Resources v. Evans,* 493 N.E.2d at 1303. The rationale applies with equal force regardless of the capacity in which the sovereign acts. Though W.P.I.'s attack on the logic underlying this rationale might legitimately be waged against the state legislature, this court may not ignore plainly expressed legislative policy.

Judgment affirmed.

BUCHANAN and CONOVER, JJ., concur.