**GREATER HAMMOND COMMUNITY SERVICE, Appellant–Defendant,**

v.

**Lucile MUTKA, Appellee–Plaintiff.**

No. 45A03–9706–CV–203.

Court of Appeals of Indiana.

Sept. 23, 1998.

---

Robert J. Kopka, Lawrence M. Hansen, Gregory M. Bokota, Landau, Omahana & Kopka, Merrillville, for Appellant–Defendant.

David W. Holub, David M. Hamacher, Ruman, Clements, Tobin & Holub, P.C., Hammond, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

In this tort action brought by Lucile Mutka, Greater Hammond Community Service, Inc. ("GHCS") appeals from a final judgment of $700,000 entered in favor of Mutka wherein the parties stipulated that Greater Hammond Community Service could seek review of the trial court's determination that it was not a governmental entity entitled to protection under the Indiana Tort Claims Act.[1]

We affirm.

### ISSUES

I. Whether GHCS is a governmental entity entitled to the liability cap of $300,000 under the Indiana Tort Claims Act.

II. Whether the trial court committed reversible error in denying GHCS an opportunity to supplement its argument on the cross-motions for summary judgment while subsequently allowing Mutka to supplement her argument.

III. Whether the trial court erred by striking certain rhetorical paragraphs of affidavits designated by GHCS.

IV. Whether genuine issues of fact exist for precluding the summary judgment in favor of Mutka.

### STATEMENT OF THE FACTS

In 1975, a small group of Hammond residents founded and incorporated Hammond Opportunity Center, Inc., as a not-for-profit corporation in Indiana. In 1976, the board of directors for Hammond Opportunity Center amended its articles of incorporation so that it would qualify for federal tax exemption status. The board amended its articles of incorporation again in 1979, changing its name to Greater Hammond Community Services, Inc.

In February 1994, GHCS entered into a contract with the Lake County Equal Opportunity Council, Inc. ("LCEOC"), a community action agency under the Indiana Tort Claims Act, to provide certain services to the low income, elderly and physically impaired residents in the Hammond area.[2] These services provided by GHCS included providing a transportation service for the elderly.

On October 19, 1994, Lucile Mutka, an 86–year–old widow, was a passenger on a bus driven by Gleason King, an employee of GHCS, when the bus collided with another vehicle. King, who was operating the bus within the scope of his employment at GHCS, failed to stop for a red traffic signal. Mutka sustained personal injuries and incurred significant medical expenses. LCEOC leased the bus from the Northern Indiana Regional Planning Commission ("NIRPC") at a nominal fee.

On February 16, 1995, Lucile Mutka filed a complaint for damages against LCEOC, GHCS, NIRPC, and King. The parties stipulated that LCEOC and NIRPC were community action agencies under the Indiana Tort Claims Act ("ITCA"). LCEOC, GHCS, NIRPC and King filed a motion for partial summary judgment, seeking a determination that all of the named defendants were gov-

---

1. Oral argument was held on May 26, 1998.

2. The contract failed to set out or describe the specific services GHCS was to provide LCEOC. Under the general terms of the contract, LCEOC agreed "to purchase those services from [GHCS]

which are herein described and further approved by LCEOC in the Service Requirements, Attachment C." However, we have been unable to find Attachment C in the designated material.

ernmental entities and that the aggregate liability of the defendants for Mutka's alleged injuries could not exceed the liability cap of $300,000 pursuant to ITCA. Specifically, GHCS argued that it was a political subdivision entitled to the liability cap because it fell within the definition of a community action agency under Ind.Code § 12–14–23–2. Alternatively, GHCS argued that it was a division of LCEOC, which is a community action agency under Indiana law, and therefore entitled to protection under the liability cap of the ITCA. In response, Mutka filed her own motion for partial summary judgment requesting a determination by the court that the liability cap under the ITCA did not apply to GHCS because GHCS was not a community action agency or any other governmental entity.

On September 4, 1996, the trial court held a hearing on the cross motions for partial summary judgment. After a hearing, Mutka filed a supplemental argument in support of her partial summary judgment motion. On September 16, 1996, the defendants objected and filed a motion to strike Mutka's supplemental argument. Without ruling on the motion to strike, the trial court entered an order providing in pertinent part as follows:

> It is undisputed that [GHCS] is an independent legal entity, with separate articles of incorporation and bylaws. No records have been presented to the Court to demonstrate that [GHCS] is a division of [LCEOC]. [GHCS] elected the separate corporate form. There is no evidence that [GHCS] was designated as a community action agency by the Governor of the State of Indiana.
>
> IT IS NOW THEREFORE ORDERED that the Motion for Partial Summary Judgment filed by [Mutka] as to [GHCS] is hereby GRANTED. And the Court hereby holds that the Indiana Tort Claims Statute, IC 34–4–16.5–1 et seq. does not apply to [GHCS].

(R. 225–26).

The trial court subsequently entered an agreed final judgment wherein GHCS conceded liability to Mutka in the amount of $700,000. The final judgment also specifically provided that the agreed judgment was entered with the understanding that GHCS could pursue an appeal of the trial court's order granting partial summary judgment in favor Mutka. The trial court dismissed the remaining defendants with prejudice. Additional facts will be supplied as necessary.

## DECISION

### I. Liability Cap

■ Under the ITCA, the amount of damages that may be assessed in tort against a governmental entity is limited as follows:

> The combined aggregate liability of all governmental entities and of all public employees ... does not exceed three hundred thousand dollars ($300,000) for injury to or death of one (1) person in any one (1) occurrence and does not exceed five million dollars ($5,000,000) for injury to or death of all persons in that occurrence.

Ind.Code § 34–4–16.5–4. A "governmental entity" is the state or a political subdivision of the state. Ind.Code § 34–4–16.5–2(c). For purposes of the ITCA, a community action agency as defined by Ind.Code § 12–14–23–2 is deemed a political subdivision. Ind.Code § 34–4–16.5–20. I.C. § 12–14–23–2 provides that a community action agency is an entity that meets the following conditions:

(1) Is any of the following:

    (A) A political subdivision of the state.

    (B) A combination of political subdivisions.

    (C) An agency of a political subdivision.

    (D) A private nonprofit agency.

(2) Has the authority under state or federal law to receive money to support the community action programs described in section 3 and 4 of this chapter.

(3) Is designated as a community action agency by the governor or by federal law.

The issue of whether an entity is a governmental entity and therefore entitled to protection of the liability cap under the ITCA is a question of law for the court, not jury. See *Indiana State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind.1988) ("While there is no proper purpose served by advising the jury of the statutory limits [of the ITCA], we find that the entry of judgment is the appro-

priate point at which the statute should be applied."); *see also State v. Bouras,* 423 N.E.2d 741, 744 (Ind.Ct.App.1981).[3]

On appeal, GHCS concedes that it has never been designated as a community action agency by the governor of this state or by federal law; therefore, it is not a community action agency as defined by I.C. § 12–14–23–2. GHCS argues, however, that as a private not-for-profit corporation providing essential government services, it is an instrumentality of the state entitled to the protection of the liability cap for governmental entities under the ITCA. As authority, GHCS relies upon *Ayres v. Indian Heights Volunteer Fire Department,* 493 N.E.2d 1229 (Ind.1986).

In *Ayres,* our supreme court addressed the issue of whether a volunteer fire department was entitled to the immunity afforded by the ITCA. The court stated that "[w]hen private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state affecting governmental agencies and corporations." *Id.* at 1235 (quoting *Evans, et al. v. Newton, et al.,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)). The court then stated that firefighting is a service that is "uniquely governmental," noting that the "need to control, prevent, and fight fires for the common good of the community has been universally accepted as a governmental function and duty in this State" and that it did not "know of the existence in Indiana of any private enterprise in the business of fighting fires." *Id.* at 1235. Then, relying largely on the comprehensive statutory scheme that creates volunteer fire departments and defines their relationships to municipalities they serve, the court found that the volunteer fire department was "an instrumentality of local government and was protected by the Indiana Tort Claims Act." *Id.* at 1237.

■ *Ayres* is readily distinguishable from the present case. First, unlike the volunteer fire department in *Ayres,* the record reveals that GHCS is not a statutory creation, but simply a private not-for-profit corporation established by a small group of Hammond residents independent of any governmental entity. Second, GHCS, unlike the volunteer fire department in *Ayres,* does not offer a service uniquely governmental in nature. Although GHCS argues that it exists for the purpose of putting out "'social' fires that arise through poverty, disparate economic resources and poor education," Appellant's Brief, p. 13, the designated evidence in this case merely reveals that GHCS contracted with LCEOC to provide transportation services for the elderly. Since many private not-for-profit organizations can and do provide these type of transportation services, we cannot say that GHCS provides services that are *uniquely* governmental in nature and universally accepted as an essential governmental function. Therefore, GHCS, unlike the fire department in *Ayres,* is not a governmental instrumentality entitled to the protection under the ITCA but an independent contractor providing services to a political subdivision.

In further support of its contention that it is an instrumentality of the state, GHCS cites *World Productions v. Capital Improvement Board,* 514 N.E.2d 634 (Ind.Ct.App. 1987), wherein this court concluded that Capital Improvement Board was a governmental entity without classifying it as a political subdivision enumerated in the ITCA. As authoritative guidance in reaching this conclusion, *World Productions* relied upon a two-part inquiry as set out in *Brock v. Chicago Zoological Society,* 820 F.2d 909 (7th Cir. 1987). Under the two-part test, "any entity that is '(1) created directly by the State, so as to constitute a department or administrative arm of the government, or (2) administered by individuals who are controlled by public officials and responsible to such officials or the general public' will be deemed to be a state or political subdivision." 514 N.E.2d at 637 (citing *Brock,* 820 F.2d at 910). GHCS urges this court to apply this test and find that it is a political subdivision under the ITCA.

We conclude that GHCS satisfies neither of these tests. First, GHCS does not contend, nor do we find, that the record establishes that it was "created directly by the

---

**3.** We note that this question may require factual development by the trial court.

state, so as to constitute a department or administrative arm of the government." *Id.* As noted above, a group of individuals created GHCS as a private not-for-profit corporation under the applicable Indiana law. No special act of the state legislature or any public official was required to create it. As a recipient of a service provider contract with LCEOC, GHCS's relationship to LCEOC appears to be essentially one of a private not-for-profit contractor rather than a department or administrative agency.

Second, GHCS is not administered by individuals who are responsible to public officials or to the general public. Its governing body is a self-perpetuating board of directors, the majority of whom (1) are neither appointed by nor subject to removal by public officials or the general public, and (2) have no official or formal connection to any state agency or political subdivision. The duties of the board members include determining "major personnel, fiscal and program policies;" approving programs, plans and priorities; and sharing "the responsibility of the general direction and source of policy of the corporation." (Supp. R. 27). There is no evidence that these responsibilities of the board of directors are subject to approval by any governmental body. It is true that under the service contract, GHCS operates under significant directives and instructions while providing its services. However, this accountability of GHCS's board of directors to LCEOC derives from the contractual relationship between GHCS and LCEOC, which the board can terminate upon thirty days notice. Under these circumstances, we cannot say that GHCS is administered by individuals who are accountable to public officials or the general electorate.

GHCS next contends that it is entitled to the protection of the ITCA because it is engaged in a joint venture with LCEOC, a political subdivision. In support of this contention, GHCS cites *Brunton v. Porter Memorial Hosp.*, 647 N.E.2d 636 (Ind.Ct.App. 1994). In *Brunton*, a panel of this court held that two governmental entities under the ITCA, Porter County Commissioners and Porter Memorial Hospital, were entitled to the protections of the ITCA when acting in a joint venture to provide emergency medical services. *Id.* at 640.

The *Brunton* case, however, is readily distinguishable from the facts in the present case. Unlike *Brunton*, the present case does not involve two undisputed governmental entities acting jointly to provide an essential governmental service. As noted above, the evidence in the record demonstrates that GHCS is a private not-for-profit organization contracting to provide transportation services for a governmental entity. Therefore, *Brunton* is not applicable to the present case.[4]

## II. Supplemental Argument

On September 4, 1996, the trial court held a hearing on the cross motions for summary judgment. During the hearing, the trial court asked counsel for GHCS whether it was a separate entity with an agency relationship with LCEOC or a division of LCEOC. Counsel replied that he believed that GHCS could be both an agent and division of LCEOC. Counsel then stated, "I hate to do this, but I would be more than happy to brief that issue." (R. 250). The trial court responded by stating that both parties had already had an opportunity to brief the issue. At the hearing, the trial court also asked the parties why it should address the issue of the application of the liability cap under the ITCA before Mutka received a judgment in excess of $300,000. Both parties indicated that the parties would be better able to resolve the case if the trial court decided the issue raised by the cross motions for summary judgment. On September 16, 1996, Mutka filed a one and a half page supplemental argument regarding the ripeness of the cross-motions for summary judgment. GHCS filed a motion to strike Mutka's supplemental argument. Without ruling on the motion to strike, the trial court

---

**4.** We are aware that another panel of this court in *LCEOC v. Greer*, 699 N.E.2d 763 (Ind.Ct.App. 1998), reached an opposite conclusion finding that GHCS, as a division of LCEOC, was a gov- ernmental entity entitled to the protections of the ITCA. We would simply note that the decisions were based on different facts presented by the designated material.

issued its order granting Mutka's summary judgment motion.

On appeal, GHCS contends that the trial court erred in denying its request to supplement its argument for partial summary judgment while subsequently permitting Mutka to supplement her argument. GHCS contends that "[f]airness requires that the trial court's judgment be reversed, and that this matter be remanded for supplementary proceedings so that both sides may have a chance to supplement their argument and provide the clearest picture possible for the trial court's ruling on the motions for summary judgment." Appellant's Brief, p. 19.

We reject this argument for several reasons. First, it is not clear from the record that counsel for GHCS made a motion to supplement its argument. Counsel merely stated, "I hate to do this, but I would be more than happy to brief that issue." Second, there is no evidence that the trial court considered or relied upon Mutka's supplemental argument in determining that GHCS was not a governmental entity under the ITCA. In fact, we fail to see any relevance that the supplemental argument might have had on the issue presented in this appeal. Accordingly, any error committed by the trial court in permitting GHCS to supplement its argument was harmless. Finally, we find no need to remand this case for supplementary proceedings because counsel had ample opportunity to present its arguments to the trial court.

### III. *Motion to Strike Affidavits*

GHCS contends that the trial court erred by striking certain rhetorical paragraphs contained in affidavits submitted by GHCS in support of its motion for partial summary judgment. However, in its brief, GHCS fails to cite any authority in support of its contention. Generally, a party waives any allegation of error if the party fails to present cogent argument or make citations to authorities or statutes. Ind. Appellate Rule 8.3(A)(7); *Train Collision at Gary*, 654 N.E.2d 1137, 1144 (Ind.Ct.App.1995). Accordingly, GHCS has waived this issue.

Nevertheless, in its reply brief, GHCS contends that its argument is supported by abundant authority contained in a seventeen-page response to Mutka's motion to strike, which was submitted to the trial court and referenced in GHCS's appellate brief. However, nothing in App. R. 8.3 allows for the adoption by reference of the arguments and citations of a document submitted to a trial court. Thus, we find that mere reference to errors and authorities in this document does not comply with the spirit or letter of App. R. 8.3(A)(7). *See Wright v. State*, 436 N.E.2d 335, 341 (Ind.Ct.App.1982) (Mere reference to errors cited in the motion to correct errors does not comply with the spirit or letter of App. R. 8.3(A)(7)).

### IV. *Genuine Issues of Material Fact*

GHCS next argues, without citing any authority, that "[i]f the trial court considered that genuine issues of material fact existed so as to preclude defendant's motion for partial summary judgment in this matter, these genuine issues of material fact must also exist to have precluded summary judgment from being entered in favor of [Mutka]." Appellant's Brief, p. 22. It is well settled that the fact that both parties request summary judgment does not alter our standard of review. *Contel of Indiana, Inc. v. Coulson*, 659 N.E.2d 224, 227 (Ind.Ct.App. 1995 ). We separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* Accordingly, a denial of one party's partial summary judgment motion does not necessarily preclude the granting of the opposing party's cross-motion for summary judgment. Furthermore, GHCS fails to direct this court to designated material which reveals any disputed material fact which would preclude partial summary judgment.

We affirm.

GARRARD and STATON, JJ., concur.