**LCEOC, INC., and Greater Hammond Community Services, Inc., Appellants (Defendants Below),**

v.

**Freddie GREER, Appellee (Plaintiff Below).**

No. 45S03–9904–CV–223.

Supreme Court of Indiana.

Sept. 21, 2000.

Robert J. Kopka, Lawrence M. Hansen, Gregory M. Bokota, Merrillville, Indiana, Attorneys for Appellants.

David Paul Allen, Hammond, Indiana, Attorney for Appellee.

SHEPARD, Chief Justice.

We hold here that the Lake County Equal Opportunities Council is a governmental entity entitled to protection under the Tort Claims Act, and that Greater Hammond Community Services is not.

### Facts and Procedural History

On May 3, 1994, Freddie Greer, an amputee, used a bus service provided through Greater Hammond Community Services, Inc. (GHCS). Bruce Lewis, a driver employed by GHCS, transported Greer to his doctor's appointment without incident. On the return trip, however, while Greer was strapped into his wheelchair, Lewis dropped Greer down some concrete stairs. The resulting injuries eventually caused Greer's death.

Greer's estate brought a wrongful death suit against GHCS and the Lake County Equal Opportunities Council (LCEOC), an organization affiliated with GHCS. Both defendants later moved for summary judgment alleging that they were governmental entities under the Indiana Tort Claims Act, and that Greer's claim was therefore barred for failure to comply with the Act's requirement to give early notice of the claim. The trial court denied summary judgment, finding genuine issues of material fact existed as to whether LCEOC and GHCS were governmental entities.

The defendants appealed, and the Court of Appeals held that both were governmental entities entitled to the protection of the Tort Claims Act. *LCEOC, Inc. v. Greer*, 699 N.E.2d 763 (Ind.Ct.App.1998). On the same day a different panel of the Court of Appeals decided *Greater Hammond Community Serv. v. Mutka*, 699 N.E.2d 757 (Ind.Ct.App.1998) (*Mutka*), which held that GHCS *was not* a governmental entity. We accepted transfer to resolve the contradiction.

### Discussion

■ The Indiana Tort Claims Act provides that a claim against a political subdivision is barred unless notice is filed with (1) the governing body of the political subdivision and (2) the Indiana Political Subdivision Risk Management Commission, within 180 days after a loss occurs. Ind. Code Ann. § 34–4–16.5–7(a) (West Supp. 1994).[1] The Act further provides that a "governmental entity" is the state or a political subdivision of the state. Ind.Code Ann. § 34–4–16.5–2(c) (West Supp.1994).[2]

---

1. A claim is not barred, however, for failure to file notice with the Indiana Political Subdivision Risk Management Commission if the political subdivision was not a member of the Political Subdivision Risk Management Fund when the act causing the loss took place. Ind.Code Ann. § 34–4–16.5–7(b) (West Supp. 1994) (currently Ind.Code Ann. § 34–13–3–8 (West Supp.1999)).

2. Currently Ind.Code Ann. § 34–6–2–49 (West Supp.1999).

Defendants GHCS and LCEOC claim that they are political subdivisions (and therefore governmental entities) entitled to receive notice as specified by section 34–4–16.5–7(a).

### Standard of Review

■ A grant of summary judgment requires that no genuine issue of material fact exist and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal from summary judgment, the reviewing court analyzes the issues in the same fashion as the trial court, de novo. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). The court must also view the pleadings and designated materials in the light most favorable to the non-movant, in this case, Greer.

### I. LCEOC as a Political Subdivision

■ The Indiana Tort Claims Act provides that a community action agency shall be treated as a political subdivision, Ind. Code § 34–4–16.5–20, and must meet the following conditions:

(1) Is any of the following:

(A) A *political subdivision* of the State.

(B) A combination of political subdivisions.

(C) An agency of a political subdivision.

(D) A private nonprofit agency.

(2) Has the authority under state or federal law ... to support community action programs ....

(3) Is designated as a community action agency by the governor or by federal law.

Ind.Code Ann. § 12–14–23–2 (West 1994) (emphasis added). It is apparent that LCEOC is a private nonprofit agency with authority to conduct community action programs, so the dispute between the parties focuses on whether the governor has "designated" LCEOC as a community action agency under Ind.Code § 12–14–23–2(3). In a letter to LCEOC dated June 12, 1990, Governor Evan Bayh wrote in perti-nent part, "your organization is recognized as the Community Action Agency of your area: Lake County Economic Opportunity Council Serving Jasper, Lake, Newton and Porter counties." (R. at 488.)

Greer argues that this "recognition" is an insufficient "designation" under Ind. Code § 12–14–23–2(3). (Appellee's Br. at 13.) Greer is certainly correct that designation and recognition have slightly different meanings, but pushing these nuances too far is just lexicographic hair-splitting. The words have the same effect here. By designation, the governor means, "I *say* that LCEOC is a community action agency," by recognition, "I *see* that LCEOC is a community action agency." The result of both statements is to say, "LCEOC *is* a community action agency."

### II. GHCS as a Political Subdivision

■ The parties appear to agree, as they do in *Mutka* that GHCS does not fit the statutory definition of a community action agency as set out in Ind.Code § 12–14–23–2. *See* Appellant's Br. at 5–6 (GHCS does not attempt to argue that it satisfies the three requirements in section 12–14–23–2); Appellee's Br. at 8–9. GHCS thus advances alternative grounds on which it should be deemed a political subdivision or governmental entity.

GHCS makes two arguments identical to those we disposed of today in *Mutka*, (1) that because GHCS provides "essential governmental services," it is entitled to Indiana Tort Claims Act protection under *Ayres v. Indian Heights Volunteer Fire Dep't*, 493 N.E.2d 1229 (Ind.1986), (Appellant's Br. at 10–15); and (2) that because GHCS is engaged in a joint venture with LCEOC, it is entitled to Indiana Tort Claims Act protection pursuant to *Brunton v. Porter Mem'l Hosp. Ambulance Serv.*, 647 N.E.2d 636 (Ind.Ct.App.1994), (Appellant's Br. at 15–19). We refer the parties to our disposition of those contentions in *Mutka*, as we reach the same result here. *Greater Hammond Commu-*

*nity Serv. v. Mutka,* 735 N.E.2d 780 (Ind. 2000).

GHCS makes one additional argument in its brief in the present case: that it is a governmental entity for the purposes of the Indiana Tort Claims Act because it is a public agency for the purposes of the Public Records Act. (Appellant's Br. at 19–28.) Assuming GHCS is a public agency for the purposes of one statute, it does not necessarily follow that it is a governmental entity for the purposes of another. GHCS advances two subarguments to support its claim that a public agency should also be deemed a governmental entity: (1) GHCS is publicly controlled, and (2) GHCS is controlled by LCEOC. (Appellant's Br. at 25–26, 27.)

GHCS says that it is publicly controlled because it receives the majority of its funds from public sources, is subject to the Public Records Act, and has a board with one-third of the members as elected officials. (Appellant's Br. at 25–26 (citing *World Prods., Inc. v. Capital Improvement Bd.,* 514 N.E.2d 634 (Ind.Ct.App. 1987), *trans. denied* ).) This level of control does not, however, rise to the level of public control of the Capital Improvement Board discussed in *World Productions.* The statute creating the CIB provides that the city and county appoint all the Board members and may remove them for cause, the property acquired by the Board is held in the name of the city and may not be sold without approval by the executive of the city, the Board's budget must be approved of by the city-county legislative

body, and the Board is subject to audit by the State Board of Accounts. *Id.* at 637.

While GHCS is subject to some governmental supervision due to its receipt of public funds, the only other factor GHCS mentions is the composition of its board, which is determined by agreement with LCEOC, not by statute. *See* R. at 178 (GHCS "shall comply . . . with all LCEOC administrative procedures, guides, manuals, program rules and regulations."). Designated community action agencies have historically been required to select elected officials as one-third of their board members. *See, e.g.,* 42 U.S.C.A. § 9904 (West 1995).[3] The Capital Improvement Board, on the other hand, does not select its own elected-official members; instead the city and county appoint them. For purposes of measuring the extent of governmental control, this is the difference between night and day.

GHCS claims that it "is a 'subordinate creature' of LCEOC." (Appellant's Br. at 27 (footnote omitted).) LCEOC's control of GHCS is, again, the product of contractual arrangements rather than statute. (R. at 178–89.)[4] "A group that is neither specifically named a governmental entity or political subdivision by statute nor engaged in the provision of uniquely governmental services may not receive the protection of the Indiana Tort Claims Act by contracting to be managed by an established governmental entity." *Mutka,* slip op. at 10, 735 N.E.2d at 784, 2000 WL 1369879 (citing *Perry County Dev. Corp. v.*

---

**3.** Revised; Pub.L. No. 105–285, § 201, 112 Stat. 2730 (1999).

**4.** This Agreement entered into by and between *LCEOC, Inc.* . . . and *GREATER HAMMOND COMMUNITY SERVICES, INC.,* . . . is executed pursuant to the terms and conditions set forth herein. In consideration of those mutual undertakings and covenants, the parties agree as follows:

. . . .

[GHCS] shall commence performance of services required by this Agreement on Jan-

uary 1, 1993, and shall complete performance on June 30, 1994.

. . . .

LCEOC may suspend or terminate this Agreement, in whole or in part, for cause.

. . . .

If [GHCS] is unable or unwilling to comply with any provisions of this Agreement, [it] may terminate this Agreement by providing 30 working days notice to LCEOC of such termination.

(R. at 178, 179, 183, 184.)

*Kempf,* 712 N.E.2d 1020, 1025 (Ind.Ct.App. 1999)).

### III. Tort Claims Notice

*A. Notice to LCEOC.* The plaintiff, Patricia Greer, acting as the administratrix of Freddie Greer's estate, stated in her brief that she "conceded the absence of tort claim notice while contesting the claim of ITCA coverage." (Appellee's Br. at 1.) In other words, she agrees that she has waived any contention issue of compliance with the notice requirements of the Act. The complete absence of argument regarding notice sufficiency in her Memorandum on Issue of Summary Judgment, (R. at 327–45), her argument at the hearing on summary judgment, (R. at 592–604), and her brief to the Court of Appeals and this Court supports her statement that she has conceded that issue.[5]

The Indiana Tort Claims Act provides that a claim against a political subdivision is barred unless the plaintiff meets the notice requirements of Ind.Code § 34–4–16.5–7(a). Because we hold that LCEOC is a governmental entity as that term is defined by statute, and because Greer agrees she waived the issue of compliance with the notice requirements of the Act, her claim against LCEOC is barred.

*B. Notice to GHCS.* Because we hold that GHCS is not a governmental entity for the purposes of the Indiana Tort Claims Act, however, Greer's claim against GHCS is not barred for failure to comply with the notice provisions of the Act.

### Conclusion

We therefore reverse in part, directing the trial court to grant summary judgment for LCEOC. We affirm its denial of summary judgment as to GHCS and remand for further proceedings on Greer's claim against GHCS.

DICKSON, BOEHM, and RUCKER, JJ., concur.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, J., concurring in part and dissenting in part.

I agree that Lake County Equal Opportunities Council (LCEOC) is a political subdivision for purposes of the Indiana Tort Claims Act and that tort claims notice to LCEOC was inadequate. However, I believe that the nature of the relationship between LCEOC and Greater Hammond Community Services (GHCS) is such that GHCS is also entitled to Tort Claims Act immunity.

Unlike the parent and subsidiary corporations in *McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016 (Ind.1995), LCEOC and GHCS are integrated, not-for-profit entities as a result of federal laws and regulations that encouraged local community control of service provision and decision-making regarding federal social service grant funds.[6] In particular, LCEOC serves as the Area Agency on Aging under

---

**5.** The fact that the Court of Appeals dealt with this issue does not mean that we must. Greer says she yields the point, and nothing in the record or her brief indicates otherwise.

**6.** *See, e.g.,* Economic Opportunity Act Amendments of 1967, Pub.L. No. 90–222, § 210(a), 81 Stat. 672, 691 (1967) (repealed 1981 and recodified at 42 U.S.C. § 9901–9912 (2000)) (defining community action agency as a "State or political subdivision of a State . . . or a combination of such political subdivisions . . . .") (amending the Economic Opportunity Act of 1964); *id.* § 211(c), 81 Stat. at 693 (repealed 1981 and recodified at 42 U.S.C. § 9901–9912 (2000)) ("Where a community action agency places responsibility for major policy determinations with respect to the character, funding, extent and administration of and budgeting for programs to be carried on in a particular geographic area within the community in a subsidiary board, council, or similar agency, such board, council, or agency shall be broadly representative of such area, subject to regulations of the director which assure adequate opportunity for membership. . . . Each community action agency shall be encouraged to make use of neighborhood-based organizations composed of residents of the area, or members of the groups served to assist such agency in the planning, conduct, and evaluation of components of the community action program.") (amending same).

211

the federal Older Americans Act. The Older Americans Act requires a comprehensive, coordinated social services delivery system that includes an identified service focal point in target communities. 42 U.S.C. § 3026(a)(3)(A) ("Each area agency on aging ... shall ... prepare and develop an area plan [that] ... designate[s], where feasible, a focal point for comprehensive service delivery in each community....").

The record shows that LCEOC provides services to the poor and elderly in six counties of Northwest Indiana through an organized network of service providers. The six-county area includes both highly industrialized urban areas and sparsely populated rural communities. Because of the diversity of the area and the requirements of the Older Americans Act, LCEOC divided the region into ten sub-areas and designated in each area a non-profit organization (including GHCS) to provide most of the services contained in its six basic programs. There is a single funding stream from LCEOC to its ten service providers; the services GHCS provides are determined solely by LCEOC; GHCS budgets and budget amendments are submitted to and approved by LCEOC; GHCS must obtain prior written approval of LCEOC prior to entering into any subcontract and all GHCS subcontractors must comply with the provisions of the agreement between LCEOC and GHCS; and LCEOC has full access to and the right to examine or audit all GHCS papers, documents, books, and records.

The record presents a picture of LCEOC serving as the headquarters or home office and GHCS and its sister organizations actually delivering the early childhood, nutrition, transportation, and other social services. I find this administrative structure highly analogous to that of a civil city where the mayor's office is "headquarters" but the actual municipal services are delivered by the police department, fire department, street department, etc. Just as those departments are covered by a city's Tort Claims Act immunity, so should GHCS and its sister organizations be covered by LCEOC's.

Because I believe that GHCS is a governmental entity for purposes of the Tort Claims Act, I would hold that Greer's claim against GHCS is also barred for failure to comply with the Tort Claims Act notice requirements.