**PERRY COUNTY DEVELOPMENT CORPORATION, Appellant–Defendant,**

v.

**David KEMPF, Henry Kempf and Phillip Kempf, Appellees/Cross Appellants–Plaintiffs,**

**and**

**Board of Commissioners of Perry County, City of Tell City, Indiana, and Town of Troy, Appellees–Defendants.**

No. 74A05–9711–CV–497.

Court of Appeals of Indiana.

June 8, 1999.

J. David Huber, Zoercher, Huber, McEntarfer & Goffinet, Tell City, Indiana, Attorney for Appellant.

Patrick A. Shoulders, Robert L. Burkart, Ziemer, Stayman, Weitzel & Shoulders, Ev-

ansville, Indiana, Attorneys for Amicus Curiae, The Evansville Courier Company.

H. Patrick Callahan,, Joseph H. Yeager, Jr., Baker & Daniels, Indianapolis, Indiana, Attorneys for Amicus Curiae, Indianapolis Economic Development Corporation.

Thomas K. Downs, Michael J. Lewinski, Gregory J. Morical, Ice Miller Donadio & Ryan, Indianapolis, Indiana, Attorneys for Amicus Curiae, Indiana Association of Cities & Towns, Association of Indiana Counties and Indiana Economic Development Association.

Robert R. Faulkner, Leslie C. Shively, Fine & Hatfield, Evansville, Indiana, Attorneys for Appellees/Cross Appellants, David Kempf, Henry Kempf And Phillip Kempf.

James G. Tyler, Tyler Law Office, Tell City, Indiana, Attorney for Appellee, City of Tell City, Indiana.

J. David Huber, Zoercher, Huber, McEntarfer & Goffinet, Tell City, Indiana, Attorney for Appellee, Board of Commissioners of Perry County, Indiana.

Gary R. Case, Bowers, Harrison, Kent & Miller, L.L.P., Evansville, Indiana, Attorney for Amicus Curiae, Southern Indiana Gas and Electric Company.

## OPINION

FRIEDLANDER, Judge

In this appeal, we consider the question of whether the Perry County Development Corporation (PCDC), a private, not-for-profit corporation, is subject to the Indiana Access to Public Records Act (the Public Records Act), which is codified at Ind.Code Ann. § 5–14–3–1 *et seq.* (West 1989 & Supp.1998). PCDC appeals an order in favor of David, Henry, and Phillip Kempf, in which the court granted summary judgment for the Kempfs upon its conclusion that PCDC is subject to the Public Records Act. PCDC presents the following restated issue for review:

1. Is PCDC a "public agency" as that term is defined in IC § 5–14–3–2 or IC § 5–14–1.5–2, therefore subjecting it to the Public Records Act?

The Kempfs present the following restated issues upon cross-appeal:

2. Did the trial court abuse its discretion in refusing to permit the Kempfs to supplement the record or, in the alternative, to authenticate a document?

3. Did the trial court err in failing to award attorney fees to the Kempfs?

We reverse and remand.

The undisputed facts are that PCDC is a private, not-for-profit Indiana corporation that was created to promote commercial, industrial, and civic development in Perry County, Indiana. Among PCDC's purposes are the following: Recruitment of new industry; retention and expansion of existing industry; acquisition of land for industrial purposes; and general job promotion and economic development. PCDC is governed by fifteen members. That group is comprised of ten members from various governmental agencies or bodies, two members from other not-for-profit organizations sharing a common purpose with PCDC, and one member each from the service, manufacturing, and financial sectors of the community. PCDC enters into annual contracts with the Perry County Board of Commissioners (the County) and two local governments in Perry County—the City of Tell City and the Town of Troy. PCDC receives 20% of the Economic Development Tax, which is paid twice per year. PCDC also derives some of its income from private sources. PCDC is not audited by the State Board of Accounts.

The Kempfs are residents of Tell City. On April 4, 1996, the Kempfs wrote a letter asking PCDC to make available to the Kempfs certain PCDC documents and records. The Kempfs claimed that they had a right to review the records pursuant to the Public Records Act. PCDC refused to provide the records on the basis that PCDC was not a governmental agency and thus was not subject to the aforementioned statute. On April 26, 1996, the Kempfs filed a complaint against PCDC, the Perry County Board of Commissioners (the County), the City of Tell City, and the Town of Troy. In their complaint, the Kempfs sought a declaratory judgment to the effect that PCDC was subject to the Public Records Act and also sought an order compelling PCDC to make its records available to the public.

PCDC, the County, Tell City, and Troy all answered by denying the allegations in the

complaint. In addition, the County filed a counter complaint, seeking attorney fees and punitive damages. Thereafter, the parties filed a series of summary judgment motions, including the following: (1) The Kempfs sought summary judgment against the County on the Kempfs' complaint and upon the County's counterclaim; (2) the County sought summary judgment against the Kempfs; (3) Tell City sought summary judgment against the Kempfs on their complaint; and (4) PCDC sought summary judgment against the Kempfs on their complaint. The trial court granted summary judgment in favor of the County and Tell City against the Kempfs. The trial court denied the Kempfs' summary judgment motion relative to the County's counterclaim. The court granted summary judgment in favor of the Kempfs on the Kempfs' complaint against PCDC.

■ When reviewing a summary judgment ruling, we apply the following standard of review:

Summary judgment is appropriate where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). Our standard of review is well-established. Although ... the non-moving party ... has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that [the nonmovant] was not improperly denied [its] day in court.

*Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind.1996).

## 1.

■ The Kempfs sought access to PCDC's records on the grounds that PCDC was a "public agency" as defined in IC § 5–14–3–2 or IC § 5–14–1.5–2. The Kempfs have the burden of proving that PCDC is a public agency within the meaning of the Public Records Act. *Indianapolis Convention and Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208 (Ind.1991) (*ICVA* ).

Pursuant to the Public Records Act, subject to certain specified exceptions not relevant here, any person may examine all accounts and all financial affairs of any public agency. IC § 5–14–3–3. "Public agency" is defined in IC § 5–14–3–2 as follows:

(1) Any board, commission, department, division, bureau, committee, agency, office, instrumentality, or authority, by whatever name designated, exercising any part of the executive, administrative, judicial, or legislative power of the state.

(2) Any:

(A) county, township, school corporation, city, or town, or any board, commission, department, division, bureau, committee, office, instrumentality, or authority of any county, township, school corporation, city, or town;

(B) political subdivision (as defined by IC 36–1–2–13); or

(C) other entity, or any office thereof, by whatever name designated, exercising in a limited geographical area the executive, administrative, judicial, or legislative power of the state or a delegated local governmental power.

(3) Any entity or office that is subject to:

(A) budget review by either the state board of tax commissioners or the governing body of a county, city, town, township, or school corporation; or

(B) an audit by the state board of accounts[.]

IC § 5–14–1.5–2, pertaining to the Open Door Law, defines public agency as follows:

(1) Any board, commission, department, agency, authority, or other entity, by whatever name designated, exercising a portion of the executive, administrative, or legislative power of the state.

(2) Any county, township, school corporation, city, town, political subdivision, or other entity, by whatever name designated, exercising in a limited geographical area the executive, administrative, or legislative power of the state or a delegated local governmental power.

(3) Any entity which is subject to either:

(A) budget review by either the state board of tax commissioners or the governing body of a county, city, town, township, or school corporation; or

(B) audit by the state board of accounts[.]

The Kempfs contend that PCDC is a public agency for the following reasons: (1) PCDC receives a fixed amount of funds per year that is unrelated to PCDC's performance; (2) PCDC's membership is comprised almost entirely of governmental entities; (3) nearly all of PCDC's money is received through public funds; (4) PCDC is subject to audit by the State Board of Accounts; and (5) PCDC exercises delegated governmental powers. Because the above-quoted definitions are listed in the disjunctive, the Kempfs are entitled to summary judgment if the PCDC meets the definition of "public agency" as described in either of the above-quoted statutes.

### (a)

■ The Kempfs contend that the PCDC is a public agency because it receives a fixed amount of funding per year, regardless of its performance.

In *ICVA,* our supreme court determined that the Indianapolis Convention and Visitors Association (the Association), a not-for-profit corporation, was subject to the Public Records Act in part because it was supported by the Capital Improvements Board (CIB), a public agency. According to the supreme court, the CIB's payments to the Association supported the conclusion that the Association was a public agency because:

> The payments are purely a function of the amount of tax collected by the CIB. There [was] no direct relationship to the amount of services performed by [the Association]. Once the CIB commits to pay [the Association] a certain amount of money for the year, [the Association]'s performance (or lack thereof) does not directly affect the amount it receives. No effort is made to allocate to [the Association] that portion of the hotel-motel tax which its activities helped to generate. The amount of the payment was not negotiated.... Finally, itemized claims for the payments ... were not submitted by [the Association].

*Id.* at 213–14.

The Kempfs contend that the same is true here. They claim that the contracts between PCDC and its governmental clients state that a fixed amount of money is to be paid to PCDC, and that said amount is unrelated to PCDC's performance.

PCDC counters that this case is more analogous to *State Bd. of Accounts v. Indiana Univ. Found.,* 647 N.E.2d 342 (Ind.Ct.App. 1995), *trans denied* (*IUF*), in which this court determined that the Indiana University Foundation, a private, not-for-profit corporation, was not subject to the Public Records Act. In *IUF,* the court considered the argument that the Foundation was a public entity within the meaning of the Public Records Act because of the way the Foundation was funded. The *IUF* court noted the supreme court's conclusion in *ICVA* that a fee-for-services relationship between public funds and the not-for-profit entity in question indicated that the entity was not supported by public funds. The court concluded that the Foundation was not supported by public funds because (1) the contracts between the Foundation and Indiana University were replete with references to the term "fees;" (2) the fee was negotiated on an annual basis by agreement of the parties; and (3) the fees were based upon services actually performed.

In the instant case, the materials designated by PCDC at the very least create a question of fact as to whether the payment and amount of PCDC's fees was linked to performance. The compensation was designated as compensation for professional services rendered. The amount of the fee did not fluctuate with tax revenues collected. Although there was no specified quantity of service to perform, PCDC worked full-time to perform the services that it agreed to perform in the contract. The compensation is negotiated annually and is referred to as "fees" in the contract. We conclude that the contracts between the PCDC and the governmental entities reflect a fee-for-services arrangement. Therefore, the PCDC is not subject to the Public Records act on this basis.

### (b)

■ The Kempfs contend that PCDC is a public agency because its membership is comprised almost entirely of governmental entities, reflecting governmental control of PCDC.

As an initial matter, we observe that two of the three incorporators of the PCDC are private individuals who are not connected to a governmental entity. Moreover, the fact

that PCDC's fifteen-person board of directors includes twelve public agencies does not compel the conclusion that the PCDC is itself a public agency. The court in *IUF* rejected a similar argument, stating:

> The Board of Accounts also asks us to consider the entire relationship between the Foundation and Indiana University rather than specific transactions. The Board emphasizes that the boards of both the Foundation and the University have some common members and that the Foundation exists solely to further the University's interests. Again, there is no basis for such an inquiry under our supreme court's analysis in *ICVA,* which requires only a determination whether the money paid by a public agency to a private entity is a fee for services or a subsidy. The Board does not contend that the Board is an alter ego of Indiana University, and there is no reason to look beyond the contractual relationship of the parties.

*State Bd. of Accounts v. Indiana Univ. Found.,* 647 N.E.2d at 354. As was the case in *IUF,* the composition of PCDC's board of directors is not relevant to the question of whether the PCDC is a public agency that is subject to the Public Records Act.

### (c)

■ The Kempfs contend that PCDC is subject to the Public Records Act because almost all of its money is derived from public sources.

The Kempfs are correct in their assertion that the source of the fees paid by PCDC's governmental clients is derived from public funds. However, it is not surprising that governmental entities are funded by public monies collected from sources such as taxes. No doubt, most of the fees paid by governmental entities are paid by funds derived from public sources. However, such does not transform the private entity that receives such funds into a "public agency" for purposes of the Public Records Act.

We concluded in subsection (a) above that PCDC and its governmental clients entered into a fee-for-services contract that called for the clients to pay money to PCDC. The fact that said funds were derived from public sources does not transform PCDC into a public agency.

### (d)

■ The Kempfs contend that PCDC is subject to the Public Records Act because it is subject to audit by the State Board of Accounts.

■ PCDC's contract with the Board, Tell City, and Troy, contains the following provision:

> The Corporation (PCDC) shall maintain accounts and records, including personnel, and financial records, adequate to identify and account for all costs pertaining to this contract and such other records as may be deemed necessary to assure proper accounting for all project funds. These records will be made available for audit purposes and will be retained for three (3) years after the expiration of this Contract unless permission to destroy them is granted.

*Record* at 409. Both IC § 5–14–3–2(3)(A) and IC § 5–14–1.5–2(3)(A) provide that an entity is a "public agency" if it is subject to a budget review by the governing body of a county, city, or town. Section (3)(B) of both statutes defines a public agency as any entity "subject to" audit by the State Board of Accounts. The phrase "subject to" is not defined in either statutory provision, but in this context we conclude that it means "to cause to undergo or submit to: make submit to a particular action or effect: to be or become subject." *Webster's Third New International Dictionary* 2275 (1976). An entity does not become a "public agency," thus coming within the purview of the statutes in question, by contractually *agreeing* to submit to an audit or budget review, as is the case here. Rather, an entity is "subject to" those procedures only if *compelled* to submit by statute, rule, or regulation.

In *ICVA,* our supreme court observed that the ICVA was compelled to submit to an audit by operation of law because it met the statutory definition of "public entity", viz., it was maintained and supported by public funds. Because it was a public entity, its records were available for public inspection. "The Public Records Act expressly states that an entity *subject to* an audit by the SBA meets the definition of public agency." *Id.* at 212 (citing IC § 5–14–3–2(3) (emphasis in

original)). Implicit in the supreme court's holding was that an entity is "subject to" an audit when it happens *by operation of law*. Therefore, the question of whether PCDC is subject to an audit is not determined by examining whether there was a provision to that effect in the contract between it and its governmental clients. Rather, as in *ICVA,* the question is whether it is compelled to submit to an audit by operation of law. If PCDC were compelled by operation of law, it would be by virtue of its status as a public entity.

A "public entity," for purposes of this analysis, is one that is maintained and supported by public funds. *See id.*

> [A] private entity is not maintained or supported by public monies within the meaning of Ind.Code § 5–11–1–9 merely because public monies make up a certain percentage of its revenue. If the relationship is, in fact, a fee-for-services (or goods) agreement then, clearly, an entity is not maintained or supported by public funds.

*Id.* at 212–13. We have previously observed that, viewed in a light most favorable to PCDC, the designated materials reflect that PCDC receives fees for services actually performed. There is also evidence tending to show that the calculation of PCDC's fees does not involve a consideration of tax revenues or receipts. Rather, the fees are renegotiated each year and governmental clients are billed for the amount of services received. Therefore, PCDC cannot be deemed subject to the Public Record Act upon the basis of its contractual agreement to submit to an audit or review that is not mandated by statute, rule, or regulation.

### (e)

The Kempfs contend that PCDC is a public agency because it exercises delegated governmental powers. IC § 5–14–1.5–2 and IC § 5–14–3–2 define a "public agency" as one that, "exercis[es] in a limited geographical area the executive, administrative, or legislative power of the state or a delegated governmental power." The Kempfs contend that PCDC satisfies this definition because it exercises a measure of control over county government and functions as an economic development commission. In support of this argument, the Kempfs assert that many of

PCDC's goals are similar to those that an economic development commission might have.

Central to the Kempfs' argument is the contention that the County controls PCDC. Yet, David Kempf acknowledged in a deposition that the County did *not* control PCDC, but instead worked with it "very close, hand in glove." *Record* at 792–93. Working closely with the County is not tantamount to being compelled to do the County's bidding or working subject to its control.

The Kempfs seem to argue that there is an interconnectedness between the County and PCDC that indicates that one of the parties controls the other. They cite as an example the fact that PCDC recommended that the County condemn certain property for use as an industrial park, and the County did so. PCDC correctly points out in response that any party can recommend condemnation. It is no doubt common for private parties to do so. The mere fact that the County acceded to a recommendation made by PCDC is not grounds for summary judgment in favor of the Kempfs on the basis that one party controls the other.

The Kempfs also claim that PCDC's control over the County is evidenced by the fact that PCDC paid the County's legal fees associated with the aforementioned condemnation. J. Gregory Wathen, the Executive Director of PCDC, submitted an affidavit in connection with this case. With respect to the payment of legal fees associated with condemnation, Wathen's affidavit contained the following representation:

> PCDC voluntarily offered to and did pay for the costs of the eminent domain proceedings because PCDC had privately incurred the attorney fees associated with acquisition of the rest of the industrial park. PCDC did not wish to see the taxpayers have to pay such costs from the county general fund. PCDC does not, as a matter of course, finance condemnation proceedings.

*Record* at 1051. Wathen's assertion is sufficient to prevent summary judgment in favor of the Kempfs on the basis of the payment of the county's condemnation fees.

The Kempfs contend that PCDC is a public agency because PCDC has goals that are similar to those of an economic development commission. We do not believe that a similarity between the goals of a private, not-for-profit entity and those of an economic development commission necessarily transform the private entity into a public one. Without more, the Kempfs are not entitled to summary judgment on this basis.

(f)

The Kempfs contend that PCDC is a public agency because the County has delegated power to PCDC to direct the expenditure of public funds.

In support of their contention in this regard, the Kempfs direct our attention to several documents in the record. The first of these documents is Executive Order No. 1–95, entitled "An Order Designating a Portion of the Town of Troy's Distributive Share of the Perry County Economic Development Income Tax." *Record* at 517. The order directs that the Town of Troy pay 30% of its share of revenues received through the Economic Development Income Tax to pay debt service and other costs associated with the aforementioned condemnation and for certain infrastructure improvements. The second document is Executive Order No. EO–C–95–1, entitled "An Order Amending the Capital Improvement Plan for the Perry County Economic Development Income Tax." *Record* at 519. The order directs an amendment of the County's Capital Improvement Plan to include "obligations issued to finance the acquisition of land for an industrial park and certain infrastructure improvements in or serving the Perry County Development Area No. 2." *Id.* In both documents, the only mention of PCDC is a reference to the fact that PCDC *requested* the action that was the subject of the order. Such does not support the assertion that PCDC *directed* the expenditure of the funds.

The third document is the Perry County, Indiana Capital Improvement Plan, which specified that certain Economic Development Income Tax revenue would be paid to PCDC pursuant to a contract for services between the parties. The Kempfs do not satisfactorily explain how the County providing for the payment of a contractually agreed-upon fee to PCDC is indicative of an ability on PCDC's part to control and direct the expenditure of public funds. This document does not establish as a matter of law that PCDC had the power to direct the expenditure of public funds.

In summary, we find no basis in the designated materials for rendering summary judgment in favor of the Kempfs on the question of whether PCDC is a public agency subject to the Public Records Act. The trial court erred in granting summary judgment in favor of the Kempfs and against PCDC. Further, we conclude that if the Kempfs are to prevail in their complaint against PCDC, it must be upon the grounds discussed in Issues 1(e) and 1(f) above. We reach this conclusion because we hold that PCDC prevails as a matter of law on the grounds discussed in Issues 1(a), 1(b), 1(c), and 1(d). Although PCDC has presented compelling arguments in support of its contentions with respect to Issues 1(e) and 1(f), there exist questions of fact that render summary judgment on those matters inappropriate. Therefore, this cause is remanded for a trial on the questions of whether, within the meaning of IC § 5–14–3–2 or IC § 5–14–1.5–2, PCDC (1) exercises delegated governmental powers or (2) has been given the power to direct the expenditure of public funds, so as to subject itself to the provisions of the Public Records Act.

2.

The Kempfs obtained a document entitled "Interlocal Agreement" (the Agreement). *Record* at 109. The document was not provided to the Kempfs in response to their subpoena duces tecum. The Kempfs attempted to introduce the Agreement in reply to the County's motion for summary judgment. PCDC objected on grounds that the document was not properly authenticated. The trial court sustained the objection and struck the document. The Kempfs argue that it was error for the trial court to refuse to permit the Kempfs to authenticate the agreement and to disallow an inquiry into the reasons why the document was not produced with other documents in response to the subpoena.

We are remanding for a trial on the issues set out above and there is a strong probabili-

ty that the Agreement will be offered as an exhibit at trial. At trial, the parties and the trial court will have an opportunity to cure any defects that might prevent introduction of the Agreement and to explore whether there exists an issue of noncompliance with the subpoena concerning the Agreement. Therefore, we need not address the issue at this time.

### 3.

The Kempfs contend that the trial court erred in failing to award attorney fees to them.

IC § 5–14–1.5–7(f)(1) permits the award of reasonable attorney fees, court costs, and other reasonable expenses if the plaintiff prevails and the court finds that the defendant's violation was knowing and intentional. IC § 5–14–3–9(h)(1) provides substantially the same remedy. In view of the fact that we have reversed the grant of summary judgment in favor of the Kempfs, it cannot be ascertained at this time whether the statute applies.

Judgment reversed and remanded with instructions.

ROBERTSON and STATON, JJ., concur.