Jason LANE b/n/f Joanne SHARP,
Appellant–Plaintiff,

v.

FRANKFORT COMMUNITY SCHOOLS BUILDING TRADES CORPORATION, Appellee–Defendant.

No. 12A02–0012–CV–757.

Court of Appeals of Indiana.

May 17, 2001.

Brian W. Walker, Cheryl M. Knodle, Ball, Eggleston, Bumbleburg, McBride, Stapleton & Walkey, P.C., Lafayette, IN, Attorneys for Appellant.

Thomas J. Belcher, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jason Lane ("Lane") by his next friend, his mother Joanne Sharp, brings this interlocutory appeal of the trial court's grant of partial summary judgment in favor of the Frankfort Community Schools Building Trades Corporation (the "Building Trades Corporation" or the "Corporation") in his personal injury action. We reverse.

### Issue

The trial court certified the following issue for interlocutory appeal:

> whether a privately formed corporation [i.e., the Building Trades Corporation] can be a "governmental entity" for purposes of the Indiana Tort Claims Act and the Indiana Comparative Fault Act.

### Facts

Lane alleges that on October 31, 1996, he suffered personal injuries when he fell from a ladder at a Building Trades Corporation house-building site. At the time of the accident, he was a student at Clinton Central High School, one of three public high schools participating in the vocational program at that site. He further alleges that the high schools and the Corporation were negligent in their supervision of him. In response to the Corporation's motion for summary judgment, Lane designated the Corporation's original and amended articles of incorporation and by-laws, a certificate the Corporation filed to do business under a different name; and answers to two sets of interrogatories he had served upon the Corporation. The Corporation's relevant interrogatory responses reveal that its meetings are not subject to Indiana's Open Door Law,[1] its records are not subject to inspection by the Indiana Access to Public Records Act (the "Public Records Act"),[2] its budget is not subject to review by the participating school corporations, and it is not subject to audit by the State Board of Accounts or by the State Board of Tax Commissioners. The Building Trades Corporation claims tax exemption pursuant to Internal Revenue Code Section 501(c)(3) rather than under Section 115 of that code, the statute that exempts

---

1. Codified at Indiana Code Sections 5–14–15–1 through –8

2. Codified at Indiana Code Sections 5–14–3–1 through –10.

**1174**

governmental entities from federal taxation.

The Corporation filed its approved Articles of Incorporation with the Secretary of State in 1979 pursuant to the Indiana Not–For–Profit Corporation Act of 1971. Those articles provided in relevant part that the corporation was formed "[t]o provide for the education and training of the students of the Community Schools of Frankfort"; "[t]o accept and receive from any branch of Government of whatever nature or kind financial aid or other assistance provided by law"; to exercise property rights and engage in financial dealings; "[t]o expand the activities of the corporation to improve service or for community welfare whenever it appears advisable and to the best interests of the corporation"; and to have and exercise "all of the general powers and rights of non-profit corporations . . . ." Record pp. 179–80. In an affidavit filed in support of the Corporation's summary judgment motion, Mike Kelley, the president of the Corporation and Frankfort High School's director of technology, averred that the Corporation is "a cooperative venture of participating school corporations," and "a joint program of the participating school corporations[.]" The affidavit also reveals that the building trades program's instructor at the time of Lane's accident was Kenneth Meyer, an employee of the Frankfort Community School Corporation. Meyer "is under the direct supervision of the Frankfort High School Principal." Record p. 203.

Frankfort High School students enroll in the Corporation program by applying with their school's vocational director and by selection of the vocational director, assistant principal, guidance director, and principal; Clinton Central and Clinton Prairie High Schools have "their own selection process" (not described in the record). Record p. 200. In its interrogatory responses, the Corporation stated that each of the three participating high schools assigns one member to the Corporation board; additionally, as noted above, Frankfort High School employs the Building Trades instructor, who is "expected to follow rules and regulations established by the Community Schools of Frankfort." Record p. 203.

On January 14, 2000, the trial court granted partial summary judgment in favor of the Corporation. The trial court's order states in pertinent part:

1. The issue as to whether or not the Frankfort Community Schools Building Trades Corporation is exempt from the Indiana Comparative Fault Act is a question of law for the Court.

2. The Defendant, Frankfort Community Schools Building Trades Corporation is exempt from the Indiana Comparative Fault Act in this action as a result of its status as an agency or instrumentality of the state in that it is a cooperative venture of public school corporations which provides vocational education and training to high school students, for grades and credit toward their high school graduation at their respective schools.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Defendant, Frankfort Community Schools Building Trades Corporation, is exempt from the Indiana Comparative Fault Act in this matter.

Record p. 235.

### Analysis

Lane argues that the trial court erred as a matter of law in concluding that the Building Trades Corporation is a "governmental entity" for purposes of the Indiana Tort Claims Act (the "Act") and the Indiana Comparative Fault Act. In reviewing a trial court's ruling on a motion for

summary judgment, we analyze the issues presented in the same fashion as the trial court, de novo. *Greater Hammond Cmty. Servs., Inc. v. Mutka,* 735 N.E.2d 780, 782 (Ind.2000). A grant of summary judgment requires that no genuine issue of material fact exist and that the movant is entitled to judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). The court must also view the pleadings and designated materials in the light most favorable to the non-movant, in this case, Lane. *See Mutka,* 735 N.E.2d at 782.

The relevant portion of the Act is found at Indiana Code Chapter 34–13–3, entitled "Tort Claims Against Governmental Entities and Public Employees." The chapter applies "only to a claim or suit in tort," and the statute states in relevant part that a "governmental entity" is not liable for certain enumerated types of conduct. Ind. Code § 34–13–3–3. Additionally, tort claims against such "governmental entities" are not subject to Indiana's Comparative Fault statutes. *See* Ind.Code § 34–51–2–2.

Lane asserts that the Corporation does not enjoy "governmental entity" classification because the "mere fact" that it "provides vocational training, for which a public school grants school credit, does not make it an agency or instrumentality of the state." Appellant's Brief p. 4. He points to the facts that its incorporator was an individual, one not acting in the capacity of an official or other representative of a school corporation, and that it can operate independently without reporting to or seeking approval from the school corporation.

■ That an individual rather than a school corporation originally incorporated the Corporation does not in itself resolve the question of whether it enjoys the Act's protections. Pursuant to United States Supreme Court precedent, our supreme court has held that "[w]hen private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting governmental agencies and corporations." *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.,* 493 N.E.2d 1229, 1235 (Ind.1986) (citing *Evans, et al. v. Newton, et al.,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)). In *Ayres,* a written contract for fire protection existed between Taylor Township of Howard County and the Indian Heights Volunteer Fire Department. The Indiana Supreme Court reasoned that because firefighting is "a service that is *uniquely governmental,*" the Indian Heights Volunteer Fire Department was an instrumentality of local government. 493 N.E.2d at 1235–37 (emphasis added).

Differentiating between "uniquely governmental" services or functions and those performed by entities not entitled to the protection of laws and statutes affecting governmental agencies, the *Ayres* court reasoned:

Nor do we know of the existence in Indiana of any private enterprise in the business of fighting fires. This distinguishes the volunteer fire department from independent contractors in the business of paving streets, constructing school buildings or bridges, or many of the other private enterprises the government is sometimes called upon to hire to fulfill its governmental duties to the public. Those who pave streets, construct schools, or build bridges for hire by state or local government are in the business of doing these projects. They are private businesses available to anyone requiring their services, either public or private, and at a charge for their services.

493 N.E.2d at 1235. The Building Trades Corporation likens its vocational program to the volunteer fire department in *Ayres*, emphasizing that it is not "for hire" by either public or private individuals or entities, and that it "solely provides vocational education and training to **public** high school students in certain cooperating public school corporations." Appellee's Brief p. 14 (emphasis original).

■ The recent Indiana Supreme Court case, *Mutka*, guides our application of the *Ayres* "uniquely governmental" test. The *Mutka* court held that a not-for-profit regional community services organization was not a government entity entitled to the Act's protection because it did not provide a "uniquely governmental" service:

> [Greater Hammond Community Services] contracted with LCEOC 'to provide certain enumerated services to the low income, elderly, and handicapped for which LCEOC receives grants and contracts from various funding sources.' [Citation to record omitted.] LCEOC's enumerated services are: employment, education, better use of income, housing, emergency services....
>
> Providing these types of services to disadvantaged people is not uniquely governmental. Hundreds of charities in our state also do this valuable work.

735 N.E.2d at 782–83. The Corporation argues that it provides a uniquely governmental service because it is engaged in vocational instruction of public high school students. However, we do not consider the vocational instruction provided by the Corporation to be a "uniquely governmental" service, given that such instruction does not fall under a typical "police power" type of function and that other non-governmental organizations may provide similar instruction.[3]

Lane also argues that because the Building Trades Corporation is not organized pursuant to statutes providing for cooperative vocational education agreements among schools, we should distinguish this case from those in which this court has found that corporations organized pursuant to such cooperative statutes were "indistinguishable" from the organizing schools themselves. *See e.g., Yerkes v. Heartland Career Center,* 661 N.E.2d 558, 561 (Ind.Ct.App.1995) (holding that where cooperative vocational school had "no independent identity or authority," with a budget subject to approval by each participating school corporation and subject to audit by the State Board of Accounts, the school should "share the same status under the Act as each participant would when engaged in the same activity."), *trans. denied* (1996).

The Heartland Career Center in *Yerkes* was organized pursuant to Indiana Code Section 20–1–18–7, which provides in part:

> (a) Two (2) or more school corporations may cooperate to establish and maintain or supervise schools or departments for vocational education if the governing bodies of these school corporations agree to cooperate and apportion the cost of the schools or departments among the school corporations.
>
> (b) If the cooperating school corporations agree to establish and maintain or supervise the schools or departments under subsection (a), the heads of these

---

**3.** *Cf. Metal Working Lubricants Co. v. Indianapolis Water Co.,* 746 N.E.2d 352, 357 (Ind. Ct.App.2001) (holding as a matter of law that the Indianapolis Water Company ("IWC") is an instrumentality of the government because "[c]itizens have no alternative water source," and because it "operates by the authority and at the will of the City [of Indianapolis] and it is subject to extensive oversight by the State ....."; and noting that immunity under the Tort Claims Act was not at issue because IWC did not claim it).

school corporations or their delegated representatives constitute a board for the management of the schools or departments. The board may adopt a plan of organization, administration, and support for the schools or departments. This plan, if approved by the Indiana state board of education, constitutes a binding contract between the cooperating school corporations.

The Building Trades Corporation was *not* organized pursuant to this statute. Rather, the following statute permits its arrangement with Clinton Central and the two other participating high schools:

> The governing body of a school corporation may contract with a not-for-profit corporation to establish and maintain a vocational program in the building trades solely for the purpose of teaching the principles of building construction to pupils .enrolled in grades nine (9) through twelve (12). A vocational program established under this section is limited to construction of buildings upon real property owned by the not-for-profit corporation.

Ind.Code § 20–10.1–6–2.5.

There is no question that it was *legal* for the Frankfort, Clinton Central, and Clinton Prairie High Schools to contract with the Building Trades Corporation to provide vocational instruction for their students pursuant to Indiana Code Section 20–10.1–6–2.5. The question is whether we should extend *Yerkes* to include an independent, not-for-profit vocational program organized under the alternative statute.

 " 'An entity does not become a 'public agency,' thus coming within the purview of the statutes in question, by contractually *agreeing* to submit to [control by another governmental entity]. Rather, an entity is 'subject to' those procedures only if *compelled* to submit by statute, rule, or regulation.' " *Mutka*, 735

N.E.2d at 784 (quoting *Perry County Dev. Corp. v. Kempf*, 712 N.E.2d 1020, 1025 (Ind.Ct.App.1999)), *trans. denied*, (emphasis in *Mutka*). "A group that is neither specifically named a political subdivision by statute nor engaged in the provision of uniquely governmental services may not receive the protection of the Indiana Tort Claims Act by contracting to be managed by an established governmental entity." *Id.*

We find that the Corporation differs from the Heartland Career Center in *Yerkes* and the Indian Heights Volunteer Fire Department in *Ayres* such that it is not entitled to the protection of the Act. Although the Indiana Code permits school corporations to contract with a not-for-profit entity such as the Corporation, it does not compel the same level of governmental oversight as was present in case of the Heartland Career Center, which had "no independent identity or authority," and a budget subject to approval by each participating school corporation and subject to audit by the State Board of Accounts. 661 N.E.2d at 561. The Corporation, by contrast, "has authority over all areas relative to the acquisition of land, construction of buildings, and sale of properties." Record p. 204. Also, in the course of arguing for summary judgment, the Corporation stated:

> The [Building Trades Corporation] ... performs the same functions as those contemplated by [Indiana Code Section] 20–1–18–7. However, these school corporations devised and implemented a program which furthers [those goals] without relying upon direct funding or burdensome control from the state government. For this, they should be applauded, not punished. Also, the statute does not require that school corporations follow its scriptures when providing vocational education, it merely represents one specific plan that can be implemented if desired.

Record p. 229. In a similar context, we have stated, "We do not believe that a similarity between the goals of a private, not-for-profit entity and those of [a public economic development commission] necessarily transform the private entity into a public one." *Kempf,* 712 N.E.2d at 1027.[4] Moreover, although in that case the Perry County Development Corporation worked very closely with the Perry County government, we held that "[w]orking closely with the County is not tantamount to being compelled to do the County's bidding or working subject to its control." 712 N.E.2d at 1026.

██ In addition to claiming exemption from Indiana's Public Records Act, the Building Trades Corporation claims it is not subject to the state's Open Door Law because it "does not exercise executive, administrative, or legislative power of the state or a delegated local government power...." Record p. 194. We recognize that the terms "public agency," as used in the context of the Public Records Act, and "governmental entity," as used in the context of the Indiana Tort Claims and Comparative Fault Acts, are not interchangeable. However, we do not agree with the Corporation's contentions that such considerations are completely "not germane" to the question of its status under the Tort Claims and Comparative Fault Acts. Record p. 229. Such public access and financial oversight are important facets of any "governmental entity."

Although *Ayres,* like the present case, involved a statutory scheme whereby local governments could choose among several methods for providing firefighting services, in *Ayres* our supreme court reasoned that because the function or service involved was uniquely and exclusively governmental, it was "clearly the intention of the Legislature to recognize volunteer fire departments as instrumentalities of local government regardless of which of the five methods used." 493 N.E.2d at 1237. Unlike the *Ayres* court, however, we are not persuaded that the vocational program operated by the Corporation is "uniquely governmental"; thus, the same clear legislative intent to recognize such not-for-profit entities as instrumentalities of local government cannot be inferred.

### Conclusion

When the governing body of a school corporation chooses to contract with a not-for-profit entity such as the Building Trades Corporation to establish and maintain a vocational program in the building trades, pursuant to Indiana Code Section 20–10.1–6–2.5, there is no statutory mandate that the Corporation submit to governmental oversight. Given that the Corporation does not *in fact* submit to such oversight, and that the service it provides is not necessarily "uniquely governmental," we find the Corporation falls outside the ambit of the protections afforded "governmental entities" by the Indiana Tort Claims Act and the Comparative Fault Act.

Reversed.

BAKER, J., and BROOK, J., concur.

---

4. In *Kempf,* the plaintiffs contended that the Perry County Development Corporation ("PCDC") was a "public agency" subject to the Public Records Act. Like that of the Building Trades Corporation, the PCDC's governing board included "members from various governmental agencies or bodies"; also, the PCDC entered into contracts with the Perry County Board of Commissioners and two other Perry County local governments and contracted to be audited by the State Board of Accounts. However, in finding the PCDC not to be a public agency, we rejected the argument that the PCDC was "subject to" such audit pursuant to "statute, rule or regulation." 712 N.E.2d at 1022–26.