735 N.E.2d 780 (2000)
GREATER HAMMOND COMMUNITY SERVICES, INC., Appellant (Defendant Below),
v.
Lucile MUTKA, Appellee (Plaintiff Below).
Lake County Equal Opportunity Council, Northern Indiana Regional Planning Commission, Gleason B. King And Frederick J. Leep, Non-Appealing Parties, (Defendants Below),
No. 45S03-9904-CV-224.
Supreme Court of Indiana.
September 21, 2000.
*781 Robert J. Kopka, Lawrence M. Hansen, Gregory M. Bokota, Merrillville, Indiana, Attorneys for Appellant.
David W. Holub, David M. Hamacher, Hammond, Indiana, Attorneys for Appellee.
SHEPARD, Chief Justice.
About thirty-five years ago, President Johnson's war on poverty gave birth to hundreds of local non-profit corporations that carry out programs assisting the poor. Our legislature brought some of those entities within the coverage of the Indiana Tort Claims Act. One such organization, Greater Hammond Community Services, became a defendant in two tort suits. In rulings issued on the same day, two panels of the Court of Appeals reached conflicting conclusions about whether Greater Hammond is covered by the Act. We hold it is not.

Facts and Case History
On October 19, 1994, Gleason King was driving a bus operated by his employer Greater Hammond Community Services, Inc. (GHCS). GHCS was affiliated with the Lake County Equal Opportunity Council (LCEOC). LCEOC leased the bus from the Northern Indiana Regional Planning Commission (NIRPC).
When King failed to stop for a red traffic signal, the bus collided with another vehicle. Lucile Mutka, an 86-year-old widow, was a passenger on the bus who sustained personal injuries and incurred significant medical expenses.
On February 16, 1995, Mutka filed a complaint for damages against King, GHCS, LCEOC, and NIRPC. The defendants moved for partial summary judgment, seeking a determination that they were governmental entities and that their aggregate liability for Mutka's injuries could not exceed $300,000, pursuant to the Indiana Tort Claims Act. Mutka also moved for partial summary judgment, claiming that GHCS was not a governmental entity entitled to the damages limitation. The trial court granted Mutka's motion. It eventually entered a final judgment under which GHCS conceded liability in the amount of $700,000, subject to its ability to appeal the trial court's determination that GHCS was an independent, rather than governmental, entity. The trial court dismissed the remaining defendants with prejudice.
GHCS appealed, and the Indiana Court of Appeals upheld the trial court's determination that GHCS was not a governmental entity. Greater Hammond Community Serv. v. Mutka, 699 N.E.2d 757 (Ind.Ct. App.1998). On the same day, another panel decided LCEOC, Inc. v. Greer, 699 N.E.2d 763 (Ind.Ct.App.1998) (Greer), holding that GHCS was a governmental entity. Each losing party sought transfer to this Court under Appellate Rule 11(B)(2)(c) claiming a conflict in decisions by the Court of Appeals. This point was obviously well taken, so we transferred both cases here.

The Tort Claims Framework
The Indiana Tort Claims Act provides in relevant part, "The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment ... does not exceed three hundred thousand dollars ($300,000) for injury to or death of one (1) person." Ind.Code Ann. § 34-4-16.5-4 *782 (West 1983).[1] Indiana Code § 34-4-16.5-2(c)[2] defines a "governmental entity" as the state or a political subdivision of the state.
The Indiana Tort Claims Act says that community action agencies[3] shall be treated as political subdivisions. Ind.Code Ann. § 34-4-16.5-20 (West Supp.1994).[4] While the status of LCEOC under the Indiana Tort Claims Act is at issue in the companion case of Greer, the parties to this case stipulate that LCEOC is entitled to political subdivision status under the Indiana Tort Claims Act. (R. at 95.) The only remaining issue is, therefore, whether GHCS is a political subdivision. See Appellant's Pet. for Trans. to the Supreme Court at 2. We approach such questions with the recognition that the Indiana Tort Claims Act is in derogation of the common law and must therefore be strictly construed against limitations on the claimant's right to bring suit. See, e.g., Hinshaw v. Board of Comm'rs of Jay County, 611 N.E.2d 637, 639 (Ind.1993); Indiana State Highway Comm'n v. Morris, 528 N.E.2d 468, 473 (Ind.1988).

GHCS as a Political Subdivision
Although the parties agree that GHCS is not a community action agency, as defined by statute, GHCS claims it should still be considered a governmental entity on a variety of grounds.
A. Uniquely Governmental Services? GHCS asserts that an entity not listed in section 34-4-16.5-20 can nevertheless be covered by it, citing Ayres v. Indian Heights Volunteer Fire Dep't, 493 N.E.2d 1229 (Ind.1986). In that case, our Court set out a test for determining when a group may be deemed a governmental instrumentality. Borrowing language from the U.S. Supreme Court, we reasoned that when private groups are "endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting governmental agencies and corporations." Id. at 1235 (citing Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)). We held that, because firefighting is a "uniquely governmental" service, the volunteer fire department of Indian Heights was "an instrumentality of local government and was protected by the Indiana Tort Claim[s] Act." Id. at 1237.
GHCS points to certain facts it believes qualify it for treatment as a governmental entity under this test. We examine these under the standard on appeal for summary judgment. The reviewing court analyzes the issues presented at trial in the same fashion as the trial court, de novo. Carie v. PSI Energy, Inc., 715 N.E.2d 853, 855 (Ind.1999). A grant of summary judgment requires that no genuine issue of material fact exist and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The court must also view the pleadings and designated materials in the light most favorable to the non-movant, in this case, GHCS.
GHCS contracted with LCEOC "to provide certain enumerated services to the low income, elderly, and handicapped for which LCEOC receives grants and contracts from various funding sources." (R. at 82.) LCEOC's enumerated services are: employment, education, better use of income, housing, emergency services, nutrition, food, medicine, disabilities, child development, transportation, referral for other services, outreach, and in-home services, such as home-delivered meals and nutrition education.
Providing these types of services to disadvantaged people is not uniquely governmental. *783 Hundreds of charities in our state also do this valuable work. We cannot deem GHCS a governmental instrumentality under the Ayres test.
B. Governmental Control? GHCS also argues that World Prods., Inc. v. Capital Improvement Bd., 514 N.E.2d 634 (Ind.Ct.App.1987), supports its position that it may be deemed governmental without being specifically classified as a particular political subdivision under the Indiana Tort Claims Act. (Appellant's Br. at 10, 15.)
In World Productions, the Court of Appeals was called upon to decide whether the Capital Improvement Board was a governmental entity immune from claims for punitive damages. The court did not focus on the governmental character of the group's function, but instead used a two-prong test borrowed from the Seventh Circuit. 514 N.E.2d 634, 637 (Ind.Ct.App. 1987) (citing Brock v. Chicago Zoological Soc'y, 820 F.2d 909, 910 (7th Cir.1987)). Brock examined the claim of a nonprofit group that it was a political subdivision for Occupational Safety and Health Act purposes. Brock, 820 F.2d at 910. The Brock court largely relied on factors used in the Secretary of Labor's regulations concerning claims of exemption: (1) whether the state created the entity, and (2) whether the state or the public controls the entity. Id.
We have some doubt about the analytical framework deployed in World Productions,[5] but we will accept it for the sake of argument and examine GHCS's claim on its own terms. The holding in World Productions that the Capital Improvement Board was a governmental entity was based in large part on the fact that the statute creating the Board requires an exceptionally high level of governmental control.
Board members are appointed by the executive of the consolidated city (Indianapolis) and the Board of Commissioners of the County (Marion), IC XX-XX-X-X(a)[]; a board member may be removed for cause by the appointing authority, IC XX-XX-X-X(d); real property which the Board acquires is held in the name of the County and may not be sold without the approval of the executive of the consolidated city (Indianapolis), IC XX-XX-X-X(b)[ ]; the Board's funds must be handled and accounted for in the same manner as other public funds, IC XX-XX-X-X(b)[ ]; the Board's annual budget must be approved by the city-county legislative body, IC XX-XX-X-X[]; and the Board is subject to audit and supervision by the State Board of Accounts, IC XX-XX-X-X(f).
World Productions, 514 N.E.2d at 637.
GHCS relies on evidence showing that in furtherance of its charitable objectives it uses the LCEOC log, publishes documents stating that it is a division of LCEOC, receives funding through LCEOC, complies with LCEOC procedures in providing services, maintains financial records pursuant to LCEOC requirements, and operates pursuant to LCEOC's directives. LCEOC also budgets for and audits GHCS. GHCS argues that these factors are sufficient to support a conclusion that it is an instrumentality of LCEOC, which is itself a governmental entity covered by the Indiana Tort Claims Act.
On the contrary, it is apparent that GHCS voluntarily submitted to this degree of LCEOC control. Our statutes do not require this level of management; rather the parties arranged it themselves when GHCS contracted with LCEOC. (R. at *784 82-87.)[6] "An entity does not become a `public agency,' thus coming within the purview of the statutes in question, by contractually agreeing to submit to [control by another governmental entity]. Rather, an entity is `subject to' those procedures only if compelled to submit by statute, rule, or regulation." Perry County Dev. Corp. v. Kempf, 712 N.E.2d 1020, 1025 (Ind.Ct.App.1999) (holding Perry County Development Corporation is not a public agency for purposes of the Public Records Act in part because it is not "subject to" audit and budget review by the State Board of Accounts), trans. denied.
A group that is neither specifically named a political subdivision by statute nor engaged in the provision of uniquely governmental services may not receive the protection of the Indiana Tort Claims Act by contracting to be managed by an established governmental entity.[7]
C. Corporate Alter Ego? GHCS claims that it "operates under and within the structure of ... LCEOC[ ] and holds itself out as a division of LCEOC." (Appellant's Br. at 4-5 (citing R. at 67-80, 106-107).) This argument is akin to the notion that there may be a "piercing of the corporate veil" when an individual operates as the virtual alter ego of a corporation. Here, the parties appear to disagree about whether GHCS is a subsidiary of LCEOC. Compare Appellant's Br. at 4-5 (citing the ways in which LCEOC controls GHCS) with Appellee's Br. at 15-18 (arguing the corporations' separateness).
The general rule of corporate law, however, is that a corporation will not be held liable for the acts of other corporations, including its subsidiaries. William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations §§ 41.10, 43, at 568, 711 (1999). Moreover, distinct corporations, even parent and subsidiary corporations, are presumed separate. McQuade v. Draw Tite, Inc., 659 N.E.2d 1016, 1020 (Ind.1995). To overcome this presumption, a plaintiff must show that one corporation dominated another to the extent that the subordinate was the mere instrumentality of the dominant corporation, Fletcher, supra, § 41.10 at 568, that the dominant corporation employed the subordinate to perpetrate a fraud, Extra Energy Coal Co. v. Diamond Energy and Resources, Inc., 467 N.E.2d 439, 441-42 (Ind.Ct.App.1984), or that the capital placed in the subordinate was "illusory or trifling compared to the business to be done and the risks of loss...." Fletcher, supra, § 41.33 at 650. The claimant must also demonstrate that the defalcation of the corporations, for example, fraud, was the proximate cause of the injury sustained. See id. § 41.10 at 713.
For all that appears, the corporate relationship between GHCS and LCEOC is not founded on fraud or the desire to escape liability. Rather, the parties fashioned their relationship "to focus all available resources toward the goal of providing the opportunity for the disadvantage[d] of all ages to become self-sufficient, while insuring that the disadvantage[d] have a voice in the decision making process." (R. at 176.) Moreover, the business relationship *785 in no way proximately caused Mutka's injury.
Finally, the corporate alter ego doctrine is a device by which a plaintiff tries to show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other. In this case, the defendant argues that the corporations are alter egos whose corporate form should be disregarded so that it can gain the protection of the Indiana Tort Claims Act.
"The purpose of the alter ego doctrine is to avoid the inequity of one corporation using another corporation to shield itself from liability." Fletcher, supra, § 41.20 at 596. Our case law takes a dim view of its use by defendants. "While we have expressed willingness to use our equitable power to disregard the corporate form to prevent fraud or unfairness to third parties, we perceive little likelihood that equity will ever require us to pierce the corporate veil to protect the same party that erected it. It was, after all, defendant that chose to structure itself in its present multi-corporate form." McQuade, 659 N.E.2d at 1020 (employee may sue his employer's parent corporation); accord In re RCS Engineered Products Co., Inc., 102 F.3d 223 (6th Cir.1996) (corporate form pierced only for benefit of third parties).
Just as there would be no apparent basis for transferring liability from GHCS to LCEOC, we see no basis for concluding that GHCS is LCEOC for Tort Claims Act purposes.

Conclusion
GHCS is not a governmental entity or political subdivision named by statute; it is not engaged in providing uniquely governmental services; it is not a division of another governmental entity. It is therefore not a community action agency protected by the Indiana Tort Claims Act.
GHCS conceded liability for its actions and the parties agreed upon an amount. We remand this action to the trial court with instructions to award the agreed final judgment to Mutka.
DICKSON, BOEHM, and RUCKER, JJ., concur.
SULLIVAN, J., dissents with separate opinion.
SULLIVAN, Justice, dissenting.
I respectfully dissent for the reasons set forth in my opinion today in LCEOC, Inc., v. Greer, 735 N.E.2d 206 (Ind.2000).
NOTES
[1] Currently Ind.Code Ann. § 34-13-3-4 (West Supp.1999).
[2] Currently Ind.Code Ann. § 34-6-2-49 (West Supp.1999).
[3] Indiana Code § 12-14-23-2 defines "community action agency."
[4] Repealed and recodified at Ind.Code Ann. § 34-13-3-22 (West Supp.1999).
[5] The World Productions court deemed it necessary to consider the plaintiff's claim against the Board as a common law claim not governed by the Indiana Tort Claims Act. 514 N.E.2d at 636. We think it would have been relatively easy to conclude that the Board is a political subdivision under the Indiana Tort Claims Act and resolve the case by (1) applying the provision of the ITCA prohibiting punitive damages against political subdivisions, Ind.Code § 34-4-16.5-4, and (2) observing that there are no punitive damages for most contract claims.
[6] This Agreement entered into by and between LCEOC, Inc., ... and GREATER HAMMOND COMMUNITY SERVICES, INC., ... is executed pursuant to the terms and conditions set forth herein. In consideration of those mutual undertakings and covenants, the parties agree as follows:

....
[That] [i]f [GHCS] is unable or unwilling to comply with any provisions of this Agreement, [it] may terminate this Agreement by providing 30 working days notice to LCEOC of such termination.
(R. at 82, 85.)
[7] GHCS also argues that the joint venture in which GHCS and LCEOC engaged is entitled to the protection of the ITCA, citing Brunton v. Porter Mem'l Hosp. Ambulance Serv., 647 N.E.2d 636 (Ind.Ct.App.1994). Brunton is distinguishable, however, because it involved two undisputed governmental entities acting jointly: the Porter Memorial Hospital and the Porter County Commissioners. Id. at 639.