METAL WORKING LUBRICANTS COMPANY and North River Insurance Company as Subrogee of Metal Working Lubricants Company, Appellant–Plaintiff,

v.

INDIANAPOLIS WATER COMPANY, Appellee–Defendant.

No. 49A04–0004–CV–141.

Court of Appeals of Indiana.

March 30, 2001.

Robert R. Clark, Maggie L. Smith, Sommer & Barnard, P.C., Indianapolis, IN, Attorneys for Appellant.

John C. Trimble, Richard K. Shoultz, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge

Metalworking Lubricants Company and its insurer, North River Insurance Company (collectively referred to as "Metalworking Lubricants" where appropriate), appeal from the trial court's grant of summary judgment in favor of the Indianapolis Water Company ("IWC") on Metalworking Lubricants' complaint for negligence. We affirm.[1]

### Issue

Metalworking Lubricants raises the following restated issue for our review: whether IWC is entitled to summary judgment on Metalworking Lubricants' claims that sufficient water required for firefighting purposes was not available in the fire hydrants IWC serviced, causing injury to Metalworking Lubricants when a fire broke out at its facility and could not be immediately extinguished.

---

1. Oral argument was heard in this case on February 27, 2001 in Indianapolis, Indiana.

## Facts and Procedural History

The parties agree that the following operative facts are undisputed: Metalworking Lubricants Company owns a wastewater and oil treatment facility located on South Senate Avenue in the City of Indianapolis. In the summer of 1996, a fire occurred at the facility which totally destroyed several parts of the facility and gave rise to this litigation.

IWC is a privately-owned water company providing the City of Indianapolis with water for domestic purposes pursuant to a franchise contract between IWC and the City. Metalworking Lubricants' facility was connected to various water mains and lines serviced by IWC, specifically, a water main which runs along Senate Avenue and one which runs along West Morris Street. In addition, several fire hydrants located near the facility are supplied with water from those water mains. In 1988, a shut-off valve near the juncture of the Senate Avenue and West Morris Street water mains had been closed which affected these mains and in turn, the fire hydrants located near Metalworking Lubricants' facility.

When Metalworking Lubricants' facility caught fire in 1996, there was an inadequate supply of water from those hydrants for use in fighting the fire at the facility. Additional measures had to be taken to fight the fire, which took several hours to bring under control. Metalworking Lubricants' facility sustained serious damage from the fire. Metalworking Lubricants' facility is insured by North River Insurance Company. North River paid over $1.8 million in insurance proceeds to Metalworking Lubricants for losses caused by the fire. Metalworking Lubricants also incurred additional losses of $500,000 that were not covered by insurance.

Thus, this action was commenced against IWC for negligent failure to inspect and maintain the water mains servicing the fire hydrants near Metalworking Lubricants facility, seeking to recover the sums paid by North River to Metalworking Lubricants, as well as Metalworking Lubricants' losses not covered by insurance. IWC answered, asserting immunity as an affirmative defense.

Metalworking Lubricants ultimately moved for partial summary judgment on the issue of IWC's entitlement to the affirmative defense of immunity. IWC also filed a motion for summary judgment. A hearing on both motions was held and separate orders were entered as to each motion. On January 24, 2000, an order denying Metalworking Lubricants' motion was entered. Several weeks later, an order was entered granting IWC's motion and entering final judgment in IWC's favor. Metalworking Lubricants now appeals.

## Discussion and Decision

Metalworking Lubricants filed its motion for partial summary judgment in the trial court with respect to IWC's affirmative defense of immunity. IWC also filed a motion for summary judgment, alleging that it was entitled to summary judgment on Metalworking Lubricants' claims either because it had immunity or, in the alternative, because it owed no duty to Metalworking Lubricants. Because we find the issue of immunity to be dispositive, we address it exclusively.

### I. Standard of Review

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically

designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *I/N Tek v. Hitachi Ltd.*, 734 N.E.2d 584, 586 (Ind.Ct.App.2000), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App. 2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors Corp.*, 720 N.E.2d 727, 730 (Ind.Ct. App.1999), *trans. denied.* We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.*

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Freidline v. Civil City of South Bend*, 733 N.E.2d 490, 493 (Ind.Ct.App.2000).

## II. Immunity

Metalworking Lubricants filed a complaint against IWC alleging counts of negligence, breach of contract and implied warranty of merchantability, and breach of implied warranty of fitness and merchantability. In response, IWC filed an answer alleging, among other affirmative defenses, that Metalworking Lubricants' claims were "barred by any and all immunities concerning [IWC's] operations, concerning the handling, distribution or supply of water or water pressure." R. 19. Thereafter, the parties each filed a motion for summary judgment. Metalworking Lubricants' motion was denied; IWC's motion was granted, and final judgment was entered for IWC.

### A. IWC as a Governmental Entity

The first question which must be answered in determining whether IWC is entitled to immunity is whether or not it qualifies as a "governmental entity." IWC is *not* a "governmental entity" as that term is defined in the Indiana Tort Claims Act. *See* Ind.Code §§ 34-6-2-49 and 34-6-2-110 (defining "governmental entity" as "the state or a political subdivision of the state" and "political subdivision" as a "(1) county; (2) township; (3) city; (4) town; (5) separate municipal corporation; (6) special taxing district; (7) state college or university; (8) city or county hospital; (9) school corporation; (10) board or commission of one (1) of the entities listed in subdivisions (1) through (9); (11) drug enforcement task force operated jointly by political subdivisions; (12) community cor-

rectional service program organized under IC 12–12–1; or (13) solid waste management district established under IC 13–21 or IC 13–9.5–2 (before its repeal).").  However, our supreme court has held that when private groups are "endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting governmental agencies and corporations." *Ayres v. Indian Heights Volunteer Fire Dept.,* 493 N.E.2d 1229, 1235 (Ind.1986) (citing *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)).  Thus, IWC, despite being a privately-owned entity, may nevertheless be considered a governmental instrumentality if it meets the above test.

In *Ayres,* a volunteer fire department was determined to be an instrumentality of local government and held to be protected by the Indiana Tort Claim Act along with the township that employed it.  *Id.* at 1237.  In *dicta,* the court noted that

> Firefighting is a service that is uniquely governmental.  The need to control, prevent, and fight fires for the common good of the community has been universally accepted as a governmental function and duty in this State and, as far as we can determine, in this Nation from its very beginning. . . . [W]e [do not] know of the existence in Indiana of any private enterprise in the business of fighting fires.  This distinguishes the volunteer fire department from independent contractors in the business of paving streets, constructing school buildings or bridges, or many of the other private enterprises the government is some-

times called upon to hire to fulfill its governmental duties to the public.  Those who pave streets, construct schools, or build bridges for hire by state or local government are in the business of doing these projects.  They are private businesses available to anyone requiring their services, either public or private, and at a charge for their services.

*Id.* at 1235 (citations omitted).

The most recent case citing *Ayres* is *Greater Hammond Community Servs., Inc. v. Mutka,* 735 N.E.2d 780 (Ind.2000), wherein GHCS, an entity not covered by the statutory definition of "governmental entity," nonetheless asserted that it had governmental immunity.  GHCS is affiliated with the Lake County Equal Opportunity Council and provides certain services, including, in this instance, transportation services, to the low income, elderly, and handicapped.  GHCS asserted that it should have immunity because it provides a uniquely governmental service.  Our supreme court disagreed, noting that the services provided by GHCS to disadvantaged people are not "uniquely governmental" and therefore, GHCS could not be considered a governmental instrumentality under the *Ayres* test.  *Id.* at 782–83.  Therefore, GHCS was not protected by the Indiana Tort Claims Act.[2]

■ In this case, the designated evidence bearing upon the issue of whether IWC should be considered a governmental agency for immunity purposes shows that IWC is a privately-owned company which operates as a public utility pursuant to authority from the Indiana Utility Regula-

---

2.  GHCS also asserted that it should have immunity because it is under the control of LCEOC, a governmental entity.  However, the court, noting that GHCS voluntarily submitted to the control of LCEOC, held that "a group that is neither specifically named a political subdivision by statute nor engaged in the provision of uniquely governmental services may not receive the protection of the Indiana Tort Claims Act by contracting to be managed by an established governmental entity." *Id.* at 784.

tory Commission. IWC has a franchise-contract with the City of Indianapolis pursuant to which it is allowed to use the City's streets for its facilities and is to provide the City with water to be used by the City for fire protection purposes. The city ordinance, approved in 1870, granting IWC a franchise provides in general as follows: IWC is authorized to construct, maintain, and operate waterworks in the City to supply the City with water; IWC may make rules and regulations for the use of the water from its works "subject to the review and approval of the City Council"; IWC and the City Council must agree on a schedule of prices to be paid for the water by the city and its citizens; the City can purchase the waterworks with six months notice at a price agreed upon by the Common Council and IWC; and IWC is not granted the exclusive privilege of constructing and operating waterworks. Specifically applicable to the water to be used for fire emergencies, the ordinance provides:

> [IWC] shall supply that quantity of power for the extinguishment of fires, when emergencies may require, under regulations to be prescribed by the Common Council.... [IWC] shall supply to the city ... such quantity of water as may be required by the City Council for public use, drainage and fire purposes; and to that end, [IWC] shall erect and attach as many fire hydrants or fire-plugs as the City Council may direct; and from the same, the city may draw all water necessary for the prevention and extinguishments of fires....

R. 117–22, Ordinance, sections 4014–27.

Unlike GHCS, that provided services to the disadvantaged which "[h]undreds of charities in our state also [provide]," *Mutka*, 735 N.E.2d at 783, IWC provides a service akin to those provided or delegated by the government. If IWC did not pro-

vide water to the City and its citizens, the City itself would. In fact, IWC's franchise makes it clear that the City can take over IWC's operations practically at will. Moreover, although IWC's franchise also makes it clear that it does not necessarily have an exclusive franchise, IWC has been the exclusive provider of water for the City for over 100 years. Citizens have no alternative water source, and even if they did, it would be a source that was also authorized and regulated by the City. In addition, IWC has been granted the authority to exercise the power of eminent domain in acquiring land necessary for carrying out its business. *See Indianapolis Water Co. v. Lux*, 224 Ind. 125, 128, 64 N.E.2d 790, 791 (1946). "[T]he typical taking occurs when the *government* acts to condemn property in the exercise of its power of eminent domain...." 29A C.J.S. *Eminent Domain* § 381 (emphasis added).

As a matter of law, we hold that IWC is an instrumentality of the government. IWC has not only been "endowed ... with powers or functions governmental in nature," *see Ayres*, 493 N.E.2d at 1235, but it is, in essence, acting in the government's stead. IWC does not "become ... subject to the laws and statutes affecting governmental agencies ...," *see id.*, with our holding, as it is already subject to certain laws and statutes by virtue of its status as a "public utility." IWC may technically be a "private" company, but it enjoys very few attributes of a truly private company. It operates by the authority and at the will of the City and it is subject to extensive oversight by the State through the IURC. All of the business decisions that private companies can usually make without outside interference, such as expansion plans and rate-making, are subject to governmental controls when it comes to IWC. Considering the designated evidence and the statutes governing IWC's operations,

we hold that IWC can be considered a governmental entity.

Having determined that IWC can be considered a governmental entity, we must turn to the question of whether it is entitled to governmental immunity.

*B. IWC's Entitlement to Immunity*

Ordinarily, the first step in determining governmental immunity is to look at the Tort Claims Act and decide if the entity is entitled to statutory immunity. *See Benton v. City of Oakland City,* 721 N.E.2d 224, 232 (Ind.1999) ("In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances."). However, it is important to note that, in this case, IWC does not claim any immunity under the Tort Claims Act. The brief IWC filed in response to Metalworking Lubricants' motion for partial summary judgment expressly concedes this point: "IWC concedes that the Indiana Tort Claims Act ("ITCA") does not apply." R. 82. IWC's attorney again conceded the point during the summary judgment hearing when he stated, "we do not contend that the Indiana Tort Claims Act has any application whatsoever in this case. [IWC] is not a governmental entity subject to the Indiana Tort Claims Act." R. 168. Thus, we may proceed directly to the issue of whether IWC is entitled to any common law immunities.

In *Benton,* our supreme court reestablished the appropriate standards for common law governmental immunity: we presume that "a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct legal decisions) that it should be treated as one as well." *Id.* at 230. The exceptions to which *Benton* makes reference were first enumerated in *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733 (1972). *Campbell* identified three situations in which a governmental entity would be immune under the common law: 1) where a city or the state fails to provide adequate police protection to prevent crime; 2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit in negligence for making the appointment; and 3) where judicial decision-making is challenged. *Id.* at 62–63, 284 N.E.2d at 737.

In *Gates v. Town of Chandler, Water Dept.,* 725 N.E.2d 117 (Ind.Ct.App.2000), *opinion on rehearing, trans. denied,* this court addressed whether the Town of Chandler Water Department was immune under the common law from a claim that it had failed to maintain an adequate water supply and water pressure to extinguish a fire at the Gates' home.[3] We noted that adequate fire protection is so closely akin to adequate police protection, one of *Campbell's* limited exceptions to governmental tort liability under the common law, that fire protection should be treated as an exception, as well.

> Both services are essential for public safety, which is the primary function of government. Both are required to sustain a well-ordered society that values and protects the lives and property of its citizens. Police and fire protection rank together in the essential nature of the services provided. Government pro-

---

**3.** As in this case, the Town of Chandler Water Department did not claim immunity from liability as a governmental entity under the Tort Claims Act. *See Gates v. Town of Chandler, Water Dept.,* 720 N.E.2d 1192, 1194 (Ind.Ct. App.1999).

vides fire protection as an essential public service because fire, like crime, is a common enemy.

*Id.* at 119. Thus, we held that "the failure to provide adequate fire protection should be treated as an exception to governmental tort liability and, therefore, that the Water Department is immune from liability on the claim that it failed to maintain an adequate water supply to extinguish a fire...." *Id.* at 120.

■ Having determined that IWC can be considered a governmental entity, we can see no distinction between this case and *Gates.* The provision of adequate police protection is clearly immune pursuant to *Campbell,* and *Gates* holds that adequate fire protection is also immune as a function "closely akin" to police protection pursuant to the catchall provision of *Benton.* Water is clearly an essential element of fire protection, and therefore the provision of water for use in fire protection services is also immune. We note that considering IWC to be a governmental entity and giving IWC immunity in this circumstance causes no harm to the citizens, because if a private company did not provide the water services, then the government would, and pursuant to *Gates,* the government would unquestionably be immune under the same circumstances. We also note that granting IWC immunity for its role in fire protection services does not grant IWC immunity in all circumstances. It is not the provision of water *per se* that entitles IWC to immunity; it is the narrow function of providing water and equipment for fire protection services that entitles IWC to the limited common law immunity granted by *Campbell.*[4]

Because we have determined that IWC is entitled to common law immunity because of the fire protection exception, a further discussion regarding IWC's duty to Metalworking Lubricants is unnecessary. The trial court properly granted summary judgment to IWC.

### Conclusion

IWC, by virtue of its role in providing water services to the City and its citizens, can be considered a governmental entity. Pursuant to *Campbell* and *Gates,* IWC's provision of water for use in fire protection services is entitled to immunity from Metalworking Lubricants' complaint that it did not provide adequate water to fight a fire at its facility. The trial court's entry of summary judgment for IWC is affirmed.

Affirmed.

DARDEN and RILEY, JJ., concur.

---

4. Counsel for IWC conceded as much at oral argument, when he acknowledged that IWC would not be entitled to any immunity for a homeowner's claim that IWC's failure to provide sufficient water at his residence caused his lawn to die because it could not be sufficiently watered.