

**FILED**

Dec 23 2015, 10:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Paul T. Fulkerson
Skiles Detrude
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE,
DEFENSE TRIAL COUNSEL OF INDIANA

Donald B. Kite, Sr.
Wuertz Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jerry Garau
Garau Germano, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sharpsville Community
Ambulance, Inc.,

*Appellant-Defendant,*

v.

Cynthia Gilbert and
Randall Gilbert,

*Appellee-Plaintiffs*

December 23, 2015

Court of Appeals Case No.
34A05-1503-CT-101

Interlocutory Appeal from the
Howard Superior Court

The Honorable Brant J. Parry,
Judge

Trial Court Cause No.
34D02-1306-CT-530

**Baker, Judge.**

[1] Sharpsville Community Ambulance, Inc. (Sharpsville), brings this interlocutory appeal challenging the trial court's order granting partial summary judgment in favor of Cynthia and Randall Gilbert. The trial court found that Sharpsville is not entitled to the protections of the Indiana Tort Claims Act (ITCA) because it is a private company rather than a governmental entity. Sharpsville, a volunteer emergency medical services provider, contends that it falls under the ITCA because it provides a uniquely governmental service. Given precedent from our Supreme Court and the requirement that we strictly construe statutes in derogation of the common law, we find that the trial court did not err by finding that Sharpsville is not entitled to ITCA protection. We affirm and remand.

## Facts[1]

[2] The facts are not in dispute. Sharpsville is an incorporated, not-for-profit entity that operates an emergency ambulance service for the Sharpsville community in Tipton County (the County). Sharpsville is run entirely by volunteers. It does not perform non-emergency transfers for the general public; instead, it performs only emergency services that originate from the county's emergency dispatch or 911 center. In other words, Sharpsville's services are not open for hire to the public. It can only be contacted through the 911 dispatch system.

---

[1] We held oral argument on December 9, 2015, in Indianapolis. We thank the attorneys for their outstanding written and oral advocacy in this matter.

[3] Sharpsville has one vehicle—an ambulance. Pursuant to a 2010 contract between Sharpsville and the County, the County pays Sharpsville $16,000 per year in exchange for Sharpsville's agreement to serve as the community's primary emergency ambulance provider. The contract requires Sharpsville to carry general liability insurance with a minimum limit of $5 million and automobile liability insurance with a minimum limit of $5 million. Sharpsville rents a space in a barn that it shares with the Sharpsville Volunteer Fire Department. The County owns the barn and charges Sharpsville $1 per year for the use of the space.

[4] Sharpsville charges for its ambulance runs "to discourage unnecessary calls, but not for complete operation of the Service, in that those rates would be too high for most to be able to afford use of the service." Appellant's App. p. 161. Sharpsville does not pursue collections if community members are unable to pay for the services provided.

[5] On August 8, 2011, Sharpsville volunteers responded to a dispatch to the intersection of 450 N and U.S. 31, where a person was experiencing difficulty breathing. The volunteers pulled the patient from his vehicle and began to transport him toward Howard Community Hospital in the ambulance. Cynthia Gilbert was traveling eastbound on Alto Road while the ambulance was traveling north on U.S. 31. The two vehicles collided as they both entered the intersection at the same time.

[6]     On January 27, 2012, the Gilberts filed a tort claim notice, and on June 25, 2013, the Gilberts filed a complaint against Sharpsville, seeking damages for injuries sustained by Cynthia as a result of the accident. The Gilberts filed a motion for partial summary judgment on October 3, 2014, arguing that Sharpsville is not entitled to the protections of the ITCA because it is not a governmental entity. Sharpsville responded and filed a cross-motion for partial summary judgment, arguing that it is entitled to the protections of the ITCA. Following briefing and argument, the trial court issued an order on January 7, 2015, granting the Gilberts' motion and denying Sharpsville's cross-motion. In pertinent part, the trial court held as follows:

> Sharpsville is not available to anyone who would require ambulance transport. They are available only for 911 emergency calls. However, Sharpsville does charge a fee for their services. These limitations on service were put into place through the contract that Sharpsville entered into with Tipton County. In essence, Sharpsville placed these restrictions on itself. Sharpsville was not compelled to limit itself by statute, rule or regulation. . . .

> A choice was made to contract with [Sharpsville] to provide emergency ambulance service. The township could have purchased an ambulance . . . for use by the volunteer fire department pursuant to I.C. 36-8-13-3(a)(1). In that case, the ambulance would have been covered by the ITCA. However, in this case, a private company was hired for that service. The Court finds that an ambulance service is not such a uniquely governmental service.

Appellant's App. p. 6-7. At Sharpsville's request, the trial court certified its order for interlocutory appeal.

# Discussion and Decision

## I. Standard of Review

In this case, we are asked to review the trial court's order granting partial summary judgment in the Gilberts' favor. The parties agree, however, that the relevant facts are not in dispute and that our primary task is one of statutory interpretation. As that entails a pure question of law, we apply a de novo standard of review. *E.g.*, *Bd. of Comm'rs of LaPorte Cnty. v. Great Lakes Transfer, LLC*, 888 N.E.2d 784, 789 (Ind. Ct. App. 2008).

## II. Indiana Tort Claims Act

The ITCA provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from" a lengthy list of acts occurring within the scope of the function of the governmental entity. Ind. Code § 34-13-3-3. "Governmental entity" is defined as "the state or a political subdivision of the state." Ind. Code § 34-6-2-49.

### A. *Ayres v. Indian Heights Volunteer Fire Department*

We begin our analysis with our Supreme Court's opinion in *Ayres v. Indian Heights Volunteer Fire Department*, 493 N.E.2d 1229 (Ind. 1986). The relevant discussion in *Ayres* concerns whether a volunteer fire department qualified as a governmental entity under the ITCA. Our Supreme Court held that "[w]hen private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state

and are subject to the laws and statutes affecting governmental agencies and corporations." *Id.* at 1235.

[10]     In considering whether the volunteer fire department was a governmental entity, our Supreme Court first noted that

> [f]irefighting is a service that is uniquely governmental. The need to control, prevent, and fight fires for the common good of the community has been universally accepted as a governmental function and duty in this State and, as far as we can determine, in this Nation from its very beginning. . . . Nor do we know of the existence in Indiana of any private enterprise in the business of fighting fires. This distinguishes the volunteer fire department from independent contractors in the business of paving streets, constructing school buildings or bridges, or many of the other private enterprises the government is sometimes called upon to hire to fulfill its governmental duties to the public. . . . They are private businesses available to anyone requiring their services, either public or private, and at a charge for their services. This is not true of any volunteer fire department organized pursuant to our statutory law and particularly was not true of Indian Heights Volunteer Fire Department, Inc.

*Id.*

[11]     Next, the *Ayres* Court noted that our legislature recognized the need for local governments to provide for fire protection in their communities by enacting a chapter of the Indiana Code concerned with the establishment of fire protection district. The General Assembly also recognized the limited financial resources of certain smaller communities by enacting a chapter that authorized the creation of volunteer fire departments. Our Supreme Court examined the

chapter related to volunteer fire departments and concluded that "[i]t is clearly the intention of the Legislature to recognize volunteer fire departments as instrumentalities of local government . . . ." *Id.* at 1237.

[12] Finally, our Supreme Court focused on the facts related to the specific volunteer fire department before it. The Court noted that the Indian Heights Volunteer Fire Department was composed solely of volunteers who lived in the township and was created pursuant to statutes at the behest of the township. The contract price of $27,500 per year "could reasonably be determined to be nominal in amount . . . ." *Id.* Consequently, our Supreme Court determined that this fire department was an instrumentality of local government that was protected by the ITCA.

[13] Turning to the case before us, we initially note that we agree with the Gilberts that the provision of ambulance services is not a uniquely governmental service. Indeed, there are many private enterprises in Indiana in the business of providing emergency ambulance transportation, including most of the hospitals in the State. We agree with the Gilberts that if the provision of emergency medical services brings the provider under the purview of the ITCA, "virtually every hospital, physician, and paramedic in Indiana would be covered by the ITCA." Appellees' Br. p. 8. In our view, therefore, Sharpsville is more analogous to the independent contractors that pave streets and construct buildings than to the volunteer fire department.

[14] Furthermore, it is critical to note that following *Ayres*, our General Assembly amended the statutory definition of "political subdivisions" such that it now explicitly includes volunteer fire departments. Ind. Code § 34-13-3-22(3). "Volunteer fire department" is defined as follows: "a department or association organized for the purpose of answering fire alarms, extinguishing fires, and providing other emergency services, the majority of members of which receive no compensation or nominal compensation for their services." Ind. Code § 36-8-12-2. The legislature has not defined entities that solely provide emergency medical services—even all-volunteer providers of emergency medical services—as "political subdivisions" for the purpose of the ITCA.

[15] The ITCA is a statute that is in derogation of the common law. As such, we are compelled to strictly construe it. *Greater Hammond Cmty. Servs. v. Mutka*, 735 N.E.2d 780, 782 (Ind. 2000). Given those parameters and the fact that our legislature has not specifically included a definition that would encompass Sharpsville as a "political subdivision" for ITCA purposes, we are inclined to conclude that Sharpsville is not entitled to ITCA protection. Before we reach a final conclusion, however, we must consider our Supreme Court's opinion in *Mutka*, which was decided after the General Assembly amended the ITCA following *Ayres*.

## B.  *Greater Hammond Community Services v. Mutka*

[16]   In *Mutka*, the relevant issue was whether the Greater Hammond Community Services (GHCS) qualified as a political subdivision under the ITCA.[2]  GHCS contracted with Lake County to provide services to the low income, elderly, and handicapped.  The specific services provided included "employment, education, better use of income, housing, emergency services, nutrition, food, medicine, disabilities, child development, transportation, referral for other services, outreach, and in-home services, such as home-delivered meals and nutrition education."  735 N.E.2d at 782.  With little discussion, the *Mutka* Court concluded that "[p]roviding these types of services to disadvantaged people is not uniquely governmental."  *Id.*

[17]   Next, GHCS argued that because it operated pursuant to government control, it qualified as a political subdivision.  The *Mutka* Court acknowledged that GHCS's operations were limited by the contract with the government, but noted that "GHCS voluntarily submitted to this degree of . . . control.  Our statutes do not require this level of management; rather the parties arranged it themselves when GHCS contracted with [the government]."  *Id.* at 783.  Our Supreme Court found that this relationship does not raise the private entity to the level of a political subdivision:

---

[2] The injury giving rise to the lawsuit in *Mutka* occurred when a GHCS bus struck another vehicle and injured a passenger in the other vehicle.

"An entity does not become a 'public agency,' thus coming within the purview of the statutes in question, by contractually *agreeing* to submit to [control by another governmental entity]. Rather, an entity is 'subject to' those procedures only if *compelled* to submit by statute, rule, or regulation." *Perry County Dev. Corp. v. Kempf*, 712 N.E.2d 1020, 1025 (Ind. Ct. App. 1999) . . . .

A group that is neither specifically named a political subdivision by statute nor engaged in the provision of uniquely governmental services may not receive the protection of the Indiana Tort Claims Act by contracting to be managed by an established governmental entity.

*Id.* at 784 (emphases original) (footnote omitted).

[18] It is true that Sharpsville provides only emergency medical services, is comprised of volunteers, is a non-profit entity, can be reached only through 911, provides its services to a specific geographic area, and provides its services at the behest of the government for a nominal fee. These limitations, however, are self-imposed by Sharpsville's voluntary decision to enter into the contract with Tipton County. For example, Sharpsville does not operate as a part of the volunteer fire department, but it could have set up its operations in that way, which would have unquestionably offered ITCA protections. There are no statutes, rules, or regulations that *compel* Sharpsville to adhere to any of these restrictions. Pursuant to *Mutka*, therefore, these facts do not support a finding that Sharpsville is a governmental entity. Sharpsville cannot voluntarily contract its way into the status of "governmental entity."

Having considered *Mutka*, it is evident that, while *Ayres* created an exception to the ITCA for entities other than those specifically enumerated by the statute, that exception is extremely narrow. Moreover, the legislature has now explicitly included volunteer fire department—but not volunteer providers of emergency medical services—within the definition of "political subdivision." Given the evolution of this area of law from *Ayres*, to legislative amendment, to *Mutka*, we are compelled to conclude that Sharpsville does not qualify as a governmental entity for the purpose of ITCA protections. Consequently, the trial court did not err by granting the Gilberts' partial motion for summary judgment.

The judgment of the trial court is affirmed and remanded for further proceedings.

Bradford, J., and Pyle, J., concur.